414 So.2d 306 (1982)
STATE of Louisiana
v.
James FULLER.
No. 81-KA-2625.
Supreme Court of Louisiana.
May 17, 1982.
*307 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, John Sinquefield, Asst. Dist. Attys., for plaintiff-appellee.
Charles H. Braud, Jr., of Office of George R. Covert, Baton Rouge, for defendant-appellant.
CALOGERO, Justice.[*]
In this appeal from a judge conviction on a charge of second-degree battery (La.R.S. 14:34.1), we consider defendant's contentions that the trial judge erred when he denied a motion for a new trial based upon the assertion that the prosecution withheld exculpatory material, and when he found defendant guilty without sufficient evidence that he had specific intent to inflict serious bodily harm.
The state charged defendant Fuller by bill of information with having committed second-degree battery upon Brent R. Brown. Following trial, the judge found defendant guilty as charged. He sentenced defendant to serve one year in the East Baton Rouge Parish Prison, suspended the sentence and placed defendant on supervised probation for a period of two years. The judge imposed a special condition of probation that the defendant make restitution to the victim in the amount of $297.81 to be paid within the first year of probation. Defendant assigns two errors on this appeal.
The altercation which led to the charge followed a game of pool in Secret's Lounge. The victim, Brent Brown, had been playing pool throughout the evening with several people. When these others left, defendant asked Brown if he wanted to play a game for ten dollars. Brown agreed to the bet, played the game, lost and paid defendant the ten dollars. Defendant then asked Brown if he wanted to play doubles and Brown again agreed. Brown and his partner, Jamie James, lost that game to defendant and his partner, a Mr. Brannon. Defendant informed the losers that they owed twenty dollars. As James had no money, Brown gave defendant a twenty dollar bill. A few minutes later, Brown approached defendant and said that he had thought that the bet was for only ten dollars, as it had been previously. Defendant replied that the bet was for ten dollars a cue, not just ten dollars for the game. When Brown insisted that he had been playing for ten dollars a game all night, defendant insisted that there should be no arguing inside the lounge. Brannon said that there was to be no fighting. Brown replied that he did not want to fight and handed the pool cue he was holding to James. When Brown turned toward defendant again, defendant hit him in the face with his fist, knocking Brown backwards and across the pool table. Brown suffered a cut lip, a bloody nose and blurred vision. Brown sought medical attention for the vision problem. As a result of the blow, Brown's vision is permanently impaired.
Defendant testified in his own behalf, stating that he did not hit Brown with a balled-up fist, but rather slapped him with an open hand. According to defendant, Brown threw the pool cue to the floor rather than handing it to James as Brown and James had testified. Defendant also said that Brown was the aggressor, having balled up his hand and taken two or three steps toward defendant after throwing down the pool cue.
Defendant's first assignment of error alleges that the prosecutor withheld exculpatory evidence despite a defense request and despite a continuing duty to disclose this information when it became available.
In the pre-trial stages of the prosecution, defendant filed a discovery motion requesting material "favorable to the defendant on the issues of guilt or punishment." La.C. Cr.P. art. 718; Brady v. Maryland, 373 U.S. *308 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In response to this request, the prosecutor allowed defense counsel to examine his entire file in the case. In the file was a statement by James Brannon[1] that he was an eyewitness to the offense, that defendant was the aggressor and that the victim had done nothing to instigate the conflict. However, about three months after defendant's April 1, 1981 conviction, defense counsel filed a motion for a new trial based upon newly found evidence. Accompanying this motion was an affidavit by Brannon dated July 8, 1981, to the effect that the victim had instigated the incident.
At the hearing on the new trial motion, defense counsel called the attention of the trial judge to the fact that the state had listed Brannon as a witness and had subpoenaed him and had had him present at trial. According to defense counsel, the only reason that the state did not call Brannon to testify was because his testimony would not have been favorable to the state.[2] From this defense counsel draws the conclusion that the state was aware that the potential witness had changed his rendition of the events or that the statement in the prosecutor's file did not accurately reflect what Brannon had told police at the time of the altercation. The prosecutor argued that he had not called Brannon to testify because two state witnesses had already testified that defendant was the aggressor and Brannon's expected testimony was unnecessary for it would only have been cumulative on this point.
In this Court defendant correctly argues that the prosecution is under a continuing duty to disclose exculpatory evidence as it becomes available. La.C.Cr.P. art. 729.3. Also, if the non-disclosed evidence is such that it creates a reasonable doubt regarding defendant's guilt which did not otherwise exist, defendant should be granted a new trial. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Willie, 410 So.2d 1019 (La. 1982); State v. Manning, 380 So.2d 46 (La. 1980).
On a motion for a new trial based upon newly discovered evidence, the defendant has the burden to show that the evidence could not have been discovered before or during trial through the exercise of reasonable diligence. La.C.Cr.P. art. 851(3); State v. Simms, 410 So.2d 1040 (La. 1982). The ruling on a motion for a new trial is committed to the sound discretion of the trial judge and will be disturbed on appeal only when there is a clear showing of abuse of that discretion. State v. Spell, 399 So.2d 551 (La.1981); State v. Manning, 380 So.2d 54 (La.1980).
Defense counsel admitted at the hearing on the motion for a new trial that he had read the prosecutor's file and knew that Brannon was an eyewitness to the offense. For whatever reason, defense counsel did not interview the potential witness. Had counsel done so pre-trial, he could have learned whether Brannon would then have been prepared to testify in a manner exculpatory to his client. He could even have requested a recess mid-trial to talk with Brannon in the courtroom after the state closed its case without calling Brannon, then present and sitting in the rear of the courtroom. The affidavit accompanying the motion was executed three months post trial and interestingly, while laying instigation at the foot of the victim, does not say that Brannon would have so testified at trial.[3]
The trial judge did not err in denying defendant's motion for a new trial.
Defendant's second assignment of error challenges the sufficiency of the evidence to support his conviction.
*309 Initially, defendant contends that second degree battery is a crime requiring specific intent. This is a question which has not yet been addressed by this Court for second degree battery is a relatively recent addition to the criminal statutes.
Battery is defined as the "intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another." La.R.S. 14:33. Until 1978, battery was divided into two classes: aggravated and simple. Aggravated battery was (and still is) "a battery committed with a dangerous weapon," La.R.S. 14:34, while simple battery was only "a battery without the consent of the victim committed without a dangerous weapon." La.R.S. 14:35. Aggravated battery carried a sentence of not more than ten years (with or without hard labor) and simple battery allowed a sentence of not more than six months and/or a fine of not more than $300.00. In 1978, on recommendation of the Louisiana State Law Institute and the House Committee on Administration of Criminal Justice, the Legislature revised the statutory scheme concerning battery.[4]
The principal change was the establishment of an intermediate grade of battery as a distinct crime.[5] In reporting the change in its Legislative Symposium, the Louisiana Law Review (Vol. 39, p. 229) noted that the new crime required "serious bodily injury" rather than merely "bodily injury" and that the statute apparently placed "the burden upon the prosecution to introduce evidence of the extent of the victim's injuries." Equally significant, if not more so, in our view is that the statute requires that the serious bodily injury be intentionally inflicted. The significance of the legislature's use of "intentionally inflicts serious bodily injury" becomes more apparent when we note that battery is already defined as "the intentional use of force."
Criminal intent may be specific or general. "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Proof of specific intent is required where the statutory definition of a crime includes the intent to produce or accomplish some prescribed consequence. State v. Johnson, 368 So.2d 719 (La.1979); State v. Elzie, 343 So.2d 712 (La.1977).
If we replace the word battery with its statutory definition, second degree battery becomes "the intentional use of force or violence upon the person of another ... *310 committed without the consent of the victim when the offender intentionally inflicts serious bodily injury." All criminal statutes are to "be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La.R.S. 14:3. With this rule of statutory construction in mind, we believe that the Legislature intended that second degree battery be a crime requiring specific criminal intent. In this determination we are guided by the fact that aggravated battery which has long been held to be a general intent crime does not carry the second reference to intent in its definition. State v. Brumfield, 329 So.2d 181 (La.1976); In Re Glassberg, 230 La. 396, 88 So.2d 707 (1956).
In the case at bar, the trial judge ruled correctly when he stated that second degree battery is a specific intent crime. Having determined that second degree battery is a crime requiring specific intent on the part of the offender, we now turn our attention to defendant's contention that the state failed to prove this element of the crime.
The proper standard of review of the sufficiency of evidence was enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under Jackson, a reviewing court is to view "the evidence in the light most favorable to the prosecution" to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573 (emphasis in the original); State v. West, 408 So.2d 1302 (La.1982).
Defendant argues that the second degree battery statute envisions an offender who mercilessly beats a fallen victim. We do not agree with this restrictive reading of the statute. The statute clearly states that the intended harm is "serious bodily injury" and defines this to involve "unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death." La.R.S. 14:34.1.
Although intent is a question of fact, it need not be proven as a fact; instead, it may be inferred from the circumstances of the transaction. La.R.S. 15:445.
Defendant is a thirty-year old man whose occupation is a bouncer at the business where the battery occurred. Defendant was not working the night of the offense, but was spending his free time at the lounge that evening. The victim was a much younger man than defendant, approximately nineteen, and considerably smaller. Defendant hit the victim with a blow sufficient to knock him over the pool table. The blow caused the victim's sight to be permanently impaired. Under these circumstances, a rational trier of fact could certainly have found that defendant possessed the intent to do "serious bodily harm." When a much stronger man hits a younger, smaller man, the fact finder could rationally conclude that the offender intended to cause, at a minimum, unconsciousness and/or extreme physical pain.

Decree
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
LEMMON, J., concurs.
NOTES
[*] Judge H. Charles Gaudin of the Court of Appeal, Fifth Circuit and Judges Israel M. Augustine, Jr., and Philip C. Ciaccio of the Court of Appeal, Fourth Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Pascal F. Calogero, Jr., James L. Dennis, Jack Crozier Watson and Harry T. Lemmon.
[1] As earlier indicated James Brannon was defendant's partner in the pool game which preceded the battery.
[2] Defendant bases this on La.R.S. 15:432: "evidence under the control of a party and not produced by him was not produced because it would not have aided him."
[3] Defendant's conclusion that the prosecutor knew that Brannon would so testify is unsupported by the record.
[4] The new statute reads:

PART II. OFFENSES AGAINST THE PERSON
SUBPART B. ASSAULT AND BATTERY (WITH RELATED OFFENSES)
§ 33. Battery defined
Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another.
§ 34. Aggravated battery
Aggravated battery is a battery committed with a dangerous weapon.
Whoever commits an aggravated battery shall be imprisoned, with or without hard labor, for not more than ten years.
§ 34.1 Second degree battery
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than five years, or both.
§ 35. Simple battery
Simple battery is a battery committed without the consent of the victim.
Whoever commits a simple battery shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both.
Acts 1978, No. 394
[5] The only other changes were an increase in the maximum fine for simple battery (from $33.00 to $500.00), and, as relates to the definition of simple battery, deletion of the possibly troublesome reference to commission "without a dangerous weapon."