439 So.2d 1138 (1983)
STATE of Louisiana
v.
Calvin DONALDSON.
No. KA 0731.
Court of Appeal of Louisiana, Fourth Circuit.
October 6, 1983.
*1139 Ernest Lee Caulfield, New Orleans, for appellant.
Harry F. Connick, Dist. Atty., William R. Campbell, Jr., Asst. Dist. Atty., New Orleans, for appellee.
Before REDMANN, C.J., and SCHOTT and CIACCIO, JJ.
SCHOTT, Judge.
Defendant was convicted of armed robbery in violation of LSA-R.S. 14:64 and sentenced as an habitual offender under R.S. 15:529.1 to 198 years of hard labor.
In the early evening hours of September 22, 1980, the victim, Mrs. Doris Sparrow, and her friend, Mrs. Henrieu Carter, were walking near Jackson Square in the French Quarter in New Orleans when they were accosted by a man with a knife. When Sparrow resisted the man began chopping at her arm and her purse on the arm until the purse became free. He ran away with the purse. A witness across the street, John McParish, chased after the man until the offender jumped on a Public Service Bus. McParish, now joined by a number of other bystanders, managed to hold the bus for a few moments when the police came on the scene. They boarded the bus and found defendant crouched in the rear of the bus still in the possession of the knife and Sparrow's purse.
*1140 Our review of the record discloses no errors patent. Defendant assigned 11 errors but abandoned assignments 4 and 7 by failing to brief them.

ASSIGNMENT OF ERROR 1
By this assignment defendant contends that the trial court erred in denying his motion for continuance, which was on the ground that two crucial witnesses ordered subpoenaed were not present at trial. The record shows that defendant did request that subpoenas be issued to the witnesses. The minutes reflect that his counsel made an oral motion for continuance prior to the commencement of the trial. Those minutes state that the reasons for the continuance were noted by the court reporter as were the reasons for the trial judge's denial of the motion. However, such reasons are not in the record. In any event, C.Cr.P. Art. 709 provides that a motion for a continuance based on the absence of a witness must state 1) the facts to which the absent witness is expected to testify, the materiality of the testimony, and the necessity for the presence of the witness; 2) a showing of the probability that the witness will be available at the time to which the trial is continued, and 3) facts showing that defendant has exercised due diligence in attempting to procure the witness's attendance. While defendant may have satisfied the third requirement by his ordering the subpoenaes well in advance nothing in the record or transcript satisfies the other two requirements. As in State v. Washington, 407 So.2d 1138 (La.1981) and State v. Hopkins, 351 So.2d 474 (La.1977), this assignment has no merit.

ASSIGNMENT OF ERROR 2
By this assignment defendant contends that the state should have been charged with a challenge for cause when a juror was excused based on the statement by the prosecutor that the juror was preoccupied with family problems and unable to give the case his complete attention. Since the state used only 9 of its 12 peremptory challenges the designation of the juror's challenge as one for cause is not a ground for complaint. State v. George, 346 So.2d 694 (La.1977). This assignment has no merit.

ASSIGNMENTS OF ERROR 3 AND 10
By these assignments defendant complains about the prosecutor's conduct during cross examination of defendant wherein he addressed defendant as "Mr. Burglar." The evidence as to defendant's guilt was overwhelming. Furthermore, while defendant was on the witness stand he admitted to pleading guilty to simple burglary in the past. The jury was instructed to disregard the prosecutor's remark. Prosecutorial misconduct in the form of an improper remark is not a ground for a mistrial under these circumstances. State v. Green, 416 So.2d 539 (La.1982). The assignments have no merit.

ASSIGNMENT OF ERROR 6
By this assignment defendant contends that he was entitled to a mistrial for which he moved on the ground that the state in answer to defendant's motion to suppress identification had responded that no identification had taken place. The state's answer to defendant's motion to suppress identification is not in the record. At trial the victim stated that she was told by the police officer that the man who robbed her had been arrested and was in the police car. She indicated that in her state of shock, having just been slashed repeatedly and to the extent that she required 24 stitches she was not in a position to identify defendant in the police car. The victim was not asked to and did not make a pretrial identification of defendant. She did identify him at trial. Defendant was also identified at trial by Sparrow's companion, Carter, by McParish who witnessed the crime and kept the defendant within his view the entire time he was chasing him around the area until defendant got on the bus, and by the police officer who found defendant crouching in the back of the bus with the knife and the purse. This assignment has no merit.

*1141 ASSIGNMENTS OF ERROR 8 AND 9
By these assignments defendant contends that it was error to allow McParish to testify from a map that he and the prosecutor had charted outside the courtroom and to introduce the map into evidence. This added nothing to the testimony of McParish and the body of evidence against defendant, which was overwhelming. McParish testified exactly what his route was in chasing after defendant, and his testimony was in full compliance with R.S. 15:463's requirements that a witness can testify only as to facts within his knowledge. The map could have been marked in the presence of the jury in the same way that it was marked prior to going before the jury thereby saving time and delay. Defendant had ample opportunity to examine the map and cross examine McParish. These assignments have no merit.

ASSIGNMENT OF ERROR 11
By this assignment defendant complains of the trial judge's refusal to grant a mistrial moved for on the ground that one of the jurors slept during a portion of the court's charge to the jury. The record does not support the alleged sleeping. The trial judge specifically said no one was sleeping, and no effort was made by defendant to prove that the juror was sleeping. The assignment has no merit.
Before passing to the final assignment of error which has to do with the sentence, we confirm that the record has been reviewed for sufficiency of evidence in accordance with State v. Raymo, 419 So.2d 858 (La.1982), and measures up to the standards required for a proper conviction under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Any rational trier of fact viewing the evidence in a light most favorable to the prosecution could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. State v. Fuller, 414 So.2d 306 (La. (1982). Since we have already covered the evidence it would be repetitious to state it here, except to say that this defendant was caught red handed committing the crime and was immediately apprehended. Fortunately there were reliable eye witnesses who saw and participated in the entire sequence of events leading to his apprehension.

ASSIGNMENT OF ERROR 5
By this assignment defendant contends that his sentence was excessive because 1) it was imposed without compliance with C.Cr.P. Art. 894.1, 2) it was severe solely because he exercised his constitutional right to trial rather than plead guilty, and 3) it was excessive and constituted cruel and inhuman punishment in violation of state and federal constitutions. We first address the argued non-compliance with Art. 894.1.
In State v. Oubichon, 422 So.2d 1140 (La. 1982) the court remanded for resentencing for non-compliance with Art. 894.1 finding that the trial judge failed to perform his duty under the article to "articulate" the reasons for his sentences thereby demonstrating why maximum sentences were appropriate as opposed to something less.
"Upon imposition of the sentences, the trial judge denounced each defendant as a violent recidivist beyond any hope of rehabilitation. However, he failed to state the facts which support this conclusion and gave no reason for finding these particular defendants less reformable and more deserving of punishment than other persons in their offender classes who have received lesser sentences for the same crime."
A reviewing court must have the benefit of the trial court's reasons for the sentence in order to determine whether a sentence is excessive where defendant complains, as here, that his constitutional protection has been violated. State v. Daranda, 388 So.2d 759 (La.1980); State v. Sepulvado, 367 So.2d 762 (La.1979).
In the instant case the trial judge recited some facts but the question is whether there was a sufficient "articulation" to satisfy the requirements of C.Cr.P. Art. 894.1. The article begins with three criteria *1142 which would mandate a sentence of imprisonment. They are as follows:
"(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment of a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will deprecate the seriousness of defendant's crime."
During the sentencing colloquy the judge first verified that defendant in fact was convicted of simple burglary on April 26, 1979, and then reconfirmed what defendant had said on the witness stand that he was convicted of simple battery in 1976 in connection with a street fight and was convicted of theft on September 3, 1976. The judge then referred to the fact that defendant had committed all these crimes already even though he was but thirty-one years of age and noted that each of his crimes was progressively worse.
As far as the first three criteria of Art. 894.1 are concerned any other statement by the judge would have been superfluous. Here we have in defendant a man who has been convicted of a vicious crime on top of three previous crimes within a short span of time. No one can question that he is a risk to society and needs the custodial environment of a correctional institution. As to whether some lesser sentence would deprecate the seriousness of defendant's crime the trial judge specifically noted the appropriateness of maximum penalty considering this man's record. The record clearly supports the conclusion that anything less than a long jail sentence would deprecate the seriousness of his crime.
Next, we consider whether the trial judge's remarks satisfy the other eleven criteria to which he was mandated to accord weight under Art. 894.1 B. These are:
"(1) The defendant's criminal conduct neither caused nor threatened serious harm;
(2) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm;
(3) The defendant acted under strong provocation;
(4) There was substantial ground tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense.
(5) The victim of the defendant's criminal conduct induced or facilitated its commission;
(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained;
(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime;
(8) The defendant's criminal conduct was the result of circumstances unlikely to occur;
(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime;
(10) The defendant is particularly likely to respond affirmatively to probationary treatment; and
(11) The imprisonment of defendant would entail excessive hardship to himself or his dependants."
As to (1) we need not labor the point. He did in fact cause serious harm. As to (2) he must have contemplated that his conduct would cause serious harm when he stuck this knife in the faces of these women and proceeded to cut up the victim while trying to get her purse.
In this case defendant was specifically asked whether he had anything to say before sentencing and he said "No." Furthermore, he was represented by able counsel and almost a month intervened between the trial on the charge and the sentencing hearing. Defendant offered no suggestion that he did not contemplate the results of his actions, that he acted under (3)'s strong provocation, that there were (4)'s substantial grounds tending to excuse or justify his *1143 conductand so on through (5), (6), (8), and (11). As to (7) the record shows that the trial court commented on his history of lawlessness. As to (9) the court correctly noted that a person already convicted of four crimes in six years can hardly be said to possess a character and attitude indicating that he is unlikely to commit another crime. As to (10) it is fair to infer that a person already given a third chance to respond affirmatively to probationary treatment will not, three years since the third offense, so respond.
The minimum penalty under R.S. 14:64 B is five years. Under R.S. 15:529.1 A(1) the minimum penalty for defendant was one-third of R.S. 14:64 B's ninety-nine years or 33 years. It can hardly be said that the trial judge abused his discretion in sentencing him to something more than the minimum considering defendant's other three convictions and lack of anything in the record as to any mitigating circumstances whatever.
The sufficiency of the "articulation" of the court's reasons for the sentence in compliance with Art. 894.1 C must be determined on a case by case basis. In this case, where a thirty-one year old defendant can't be sentenced to less than 33 years and the facts warrant something substantially more, we conclude that the statement of the trial court in this particular case was sufficient to meet the requirements of Art. 894.1.
In support of his argument that he was given the maximum sentence solely because he chose not to plead guilty defendant has produced in this court a list of cases handled by this trial judge which purport to show his tendency to mete out the maximum sentences, especially in armed robbery prosecutions, where there were pleas of not guilty, as opposed to minimum sentences for guilty pleas. This same argument was made in State v. Oubichon, supra, and the list may be the same. Aside from the problem alluded to in Oubichon that these data are not properly before us, they would not be helpful in the absence of some showing of similarity to this case as to circumstances, particularly the presence of not one, but three, previous convictions on defendant's record. The ages of the other defendants might also be pertinent. A forty year old defendant sentenced to seven years more than the minimum of 33 years would be no better off as a practical matter than our thirty-one year old defendant if sentenced to only twenty years more than the minimum of 33 years. If defendant had pled guilty, with his record it is unlikely that he would have been given anything near the minimum especially considering the aggravating circumstances of this case where he seriously injured the victim. Defendant's argument may be good in another case, but since this sentence is appropriate as to this crime and this defendant, it becomes irrelevant whether the sentence was imposed following a trial or a guilty plea.
Finally, the argument that defendant's sentence is constitutionally excessive has no merit. It seems to be more appropriately addressed to the entire legislative scheme for dealing with habitual offenders. There is no showing that 33 years, the minimum, would constitute cruel and inhuman punishment, nor is there a showing that something appreciably more than the minimum would be no matter how much mitigation we might dream up for this defendant.
After giving due consideration and weight to any aggravating and mitigating factors, and the sentencing discretion afforded the trial judge, we do not find the sentence, although maximum, to be excessive.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.