WILLIAMS, Judge.
This is an appeal by defendant Isiah Lewis from a conviction for manslaughter in violation of La.R.S. 14:31. Defendant appeals to this court on the basis that there is insufficient evidence to sustain his conviction.
On October 28, 1982, defendant’s wife, Patricia Lewis, suffered second and third degree burns over 85% of her body. Defendant claimed that she was cooking and an explosion in the kitchen had caused the injuries. An investigation into the incident was conducted, and defendant was arrested when his wife died six days after the fire. He was indicted by a Grand Jury on a charge of second degree murder. After a trial by a twelve person jury, defendant was convicted of manslaughter. A sentencing hearing was held, and defendant received the maximum sentence, 21 years at hard labor.
Defendant asserts that there was not sufficient evidence introduced at trial to sustain his conviction. The defense produced the following facts: Although they had recently been having problems, defendant and his wife had enjoyed a good marriage for 15 years. Several of the neighbors in the immediate community and the pastor of the church which defendant attended testified that defendant was a nonviolent man and could not have performed the crime for which he was accused. Defendant himself testified and said that his wife went into the kitchen to prepare some food and he saw fire ignite her and then she ran from the kitchen to the living room to the bathroom and back to the living room. During this time he attempted to *536 put the flames out by beating her with the sofa cushions. The defense also stressed that at no time did the victim ever name her husband as having perpetrated the act and that they appeared to be a warm, loving couple.
At trial, the State adduced the following facts: On cross-examination, defendant testified that he and his wife had been separated for several weeks prior to the incident, and a few hours before the crime he had gone looking for her to ask her to come home to take care of himself and their five children. He found her dancing with another man in a bar near Charity Hospital where she worked. He dragged her out of the bar “by her hair,” and they returned to their home. Defendant testified that at about 12:45 a.m. his wife told him she was going into the kitchen to prepare something to eat. During several of the statements he gave to investigating officers, defendant testified that his wife told him that she was going to make some hamburgers. Investigators found no hamburger in the kitchen other than in the freezer. Investigators from the Police Department and the Fire Department testified unequivocally that no fire had taken place in the kitchen.
Eugene Tierney, Jr., the District Chief for the New Orleans Fire Department, responded initially to the call: The victim was on the ground, across the street from the house. He testified that as he entered the house where the fire had taken place, he smelled a sharp acrid odor similar to cleaning fluid. He also noticed a sofa cushion in the back yard that was burning and that the water faucet was on. He could not find a container that held the sharp smelling substance anywhere in the house. He did notice that the burner was in the “ON” position on the gas stove, and was not lit. He testified that no natural gas was escaping.
Several people who entered the house noticed a gasoline smell in the home. Officer Mark Willow who gave the defendant a ride home from Jo Ellen Smith Hospital where his wife had been taken in order for him to retrieve his insurance card, smelled gasoline on defendant and then most clearly in the house. He noticed that there was charred material on the living room floor near the sofa and that the smell of gasoline emanated most strongly in the living room.
Several other people who came in contact with the victim, noticed a smell of gasoline or petro-chemical on her clothes immediately after the fire. At Jo Ellen Smith Hospital, the nurse on duty asked defendant if the house had burned down and he said “No, just the couch.” The nurse queried the victim as to what happened and she told her that she was never going to tell what happened. The victim was soon transferred to Charity Hospital where she was to be treated for her burns. The doctor who initially examined her there, who was qualified at trial as an expert in the area of burn treatment, said that she was burned down the front and back of her body with the most severe burns occurring in the head area and gradually becoming less severe down the length of her body. He testified that the pattern of burns was consistent with a flammable liquid being poured down her head and ignited. He stated that the injuries were inconsistent with a natural gas flash explosion. Dr. McGary, the pathologist who did the autopsy on the victim also stated that the pattern of burns was consistent with a flammable liquid having been poured over her head, but not with a gas explosion.
Investigators from the Police and Fire Departments concluded that no fire had taken place in the kitchen. There were pieces of clothing in the living room that had been burned as well as another cushion from the sofa. These experts also concluded that there had been no burning in the kitchen and no gas explosion on the stove. They also stated that the burned sofa cushion in the yard could not have been used to put out the fire as defendant claimed, but rather had been set on fire itself.
A chemical examination of the blue jeans that the victim was wearing and the sofa cushion showed unmistakenly that gasoline had been poured on them. A skin sample *537 taken from the victim for these purposes was inconclusive.
In reviewing the evidence for sufficiency, we must view it in the light most favorable to the prosecution and in order to determine whether any rational trier of fact could have found the essential elements of the crime were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982).
Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemean- or directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.
After reviewing the evidence presented at trial, we cannot conclude that the prosecution failed to carry its burden of proof under these circumstances.
Defendant asserts that his conviction was based entirely upon circumstantial evidence. La.R.S. 15:438. In State v. Shapiro, 431 So.2d 372 (La.1983), the Supreme Court of Louisiana held that a conviction based on circumstantial evidence presented must exclude every reasonable hypothesis of innocence. After reviewing the evidence, we can find no reasonable hypothesis of innocence in this case. The defense has asserted in brief to this court, several of its own “reasonable hypotheses of innocence.” These assertions are totally without merit. Defense has asserted that (1) the victim poured gasoline on herself and committed suicide; (2) the victim poured gasoline on herself in an attempt to commit suicide, changed her mind, and then later went into the kitchen to cook dinner and ignited herself; (3) defendant Isiah Lewis poured gasoline on her, later changed his mind, then she went into the kitchen to cook something and accidentally ignited herself; and (4) an unknown party poured gasoline on victim and she later ignited herself while cooking. We find all these hypotheses to be unreasonable. No container was ever found that would have contained the flammable liquid. It is highly unlikely that the victim would have poured gasoline on herself, then taken the trouble to hide the container so that it could not have been found and then ignited herself. Also, it is highly unlikely that after having been recently doused either by herself or her husband with a flammable liquid such as gasoline, the victim would attempt to prepare dinner at a gas stove. There was also no evidence whatsoever that anyone else had entered the house at any period immediately preceding the accident. We are unable to formulate any other reasonable hypothesis of innocence in this case.
For the foregoing reasons, the conviction and sentence of defendant Isiah Lewis are hereby affirmed.
AFFIRMED.