466 So.2d 549 (1985)
STATE of Louisiana
v.
Nicholas A. ACCARDO.
No. 84-KA-353.
Court of Appeal of Louisiana, Fifth Circuit.
March 11, 1985.
Writ Denied May 24, 1985.
*550 Sidney D. Torres, III, Chalmette, for defendant-appellant.
John M. Mamoulides, Dist. Atty., Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, for plaintiff-appellee.
Before BOWES, GAUDIN and DUFRESNE, JJ.
DUFRESNE, Judge.
The defendant, Nicholas A. Accardo, was charged by Bill of Information with aggravated battery in violation of R.S. 14:34. He entered a plea of not guilty, waived his right to trial by jury, was tried by the district judge and was found guilty of second degree battery. After a pre-sentence investigation and hearing, the defendant was sentenced to one year in the parish prison, which was suspended, and he was placed on 3 years active probation with the following special conditions: (1) serve 6 months in parish prison, (2) upon release, to continue to receive psychiatric treatment, and (3) pay costs in the amount of $127.50. This appeal followed.

FACTS
The defendant stipulated that the testimony taken at the preliminary examination would be the same testimony taken at trial and the matter was submitted.
The victim, Rhonda DiCarlo, testified that on July 21, 1983, she and three girl friends took a cab to Spinnaker's Lounge on West End Boulevard. The defendant approached DiCarlo and bought her a drink and danced and talked for several hours. As DiCarlo got ready to leave with her friends, the defendant asked to bring her home. After some hesitation, DiCarlo agreed. The defendant, however, drove to a spot near the Causeway and made sexual advances upon DiCarlo. While resisting the defendant's advances, DiCarlo was struck in the head, but remained conscious. The defendant began crying when he saw the swelling caused by his blow to DiCarlo's head. She then asked for some ice. *551 He drove DiCarlo to a Tastee Donut Shop, but was unable to buy ice. However, he found a cold can of beer in an ice chest which was in his car. The beer can was applied to her head and the swelling receded.
DiCarlo then tricked the defendant into driving her to a friend's house, under the guise that it was her apartment. She managed to get into the house, locking the defendant out. He began banging on the door and ringing the doorbell, despite being told to leave by DiCarlo's friend. The police were called and they arrived to find the defendant still on the scene. He was arrested and taken to Jefferson Parish Lockup.

SUFFICIENCY OF EVIDENCE
The defendant contends that the district court's verdict of guilty of second degree battery is based on insufficient evidence to convict since there was no proof sufficient to place the alleged victim's injuries within the statutory definition of serious bodily injury.
In State v. Wright, 445 So.2d 1198, 1201 (La.1984), the Supreme Court set forth the following standard for use by appellate courts when reviewing evidence:
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. Where circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates that: "Assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."
The court has recognized that R.S. 15:438 is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis for the conviction. State v. Austin, 399 So.2d 158 (La.1981). Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. R.S. 15:438 provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. Exclusion of every reasonable hypothesis of innocence is therefore a component of the more comprehensive reasonable doubt standard, where circumstantial evidence is used to convict.
In the instant case, the defendant was found guilty of second degree battery, which is defined in R.S. 14:34.1 as follows:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
The essential elements of second degree battery, which must be proven beyond a reasonable doubt, are: (1) The intentional infliction by the defendant, (2) of "serious bodily injury" upon the victim.
Because second degree battery requires the intentional use of force or violence upon the person of another committed without consent of the victim when the offender intentionally inflicts serious bodily injury, second-degree battery is a crime requiring specific intent. State v. Fuller, 414 So.2d 306 (La.1982); State v. Daigle, 439 So.2d 595 (La.App. 1st Cir.1983).
Specific intent is defined as the state of mind which exists when the circumstances *552 indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Although intent is a question of fact, it need not be proven as a fact; intent may be inferred from the circumstances of the transaction. La.R.S. 15:445; State v. Fuller, supra.
In Fuller, the defendant, a thirty-year old male defendant punched the nineteen year old male victim in the face, causing the victim's eyesight to be permanently impaired. In finding that the defendant possessed the specific intent to do serious bodily harm, the court stated "[w]hen a much stronger man hits a younger, smaller man, the fact finder could rationally conclude that the offender intended to cause, at a minimum, unconsciousness and/or extreme physical pain." Fuller, supra at 310. See also State v. Daigle, supra, where the specific intent to cause serious bodily harm was inferred from the fact that the defendant punched his wife in the face, knocking her to the ground, and continued striking the victim with her purse.
In the instant case, the twenty-one year old male defendant struck the seventeen year old female victim in the head, either with his fist or a blackjack. In light of the above jurisprudence, we find that the defendant possessed the specific intent to cause serious bodily injury when he struck the victim; thus, the state has proven the first element of the crime of second degree battery beyond a reasonable doubt.
The second element which must be proven by the state is that the victim actually suffered "serious bodily injury", because R.S. 14:34.1 clearly requires that serious bodily injury result from the intentional act. R.S. 14:34.1 defines serious bodily injury as "bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of a function of a bodily member, organ, or mental faculty, or a substantial risk of death."
In the instant case, the victim's testimony concerning her injuries was as follows:
[A]nd I told him no and when I had my head down, I looked up and he had hit me over the head to knock me out. I did not get knocked out.
I asked him if he hit me with the billy club in his hand and my head was swollen and I never realized it and then he lifted my hair and he started crying really bad and then I looked in the rear view mirror and it was swollen and I thought that I might have a concussion and I asked him to get me some ice.... so he brought me to Tastee donut.... ... he came back into the car and said they didn't have any ice and so he handed mehe had an ice chest in the backseat and he gave me a cold beer and the swelling did do [sic] down....
After he hit me I looked up right after he hit me and it stunned me....
It should be noted that nowhere in her testimony did the victim speak of losing consciousness, extreme pain (or any pain), disfigurement, or impairment of a body function or part. The victim claimed she was "stunned" and her "head was swollen and I never realized it." The trial judge felt there was sufficient evidence to sustain a conviction of second degree battery, stating at the defendant's Motion for New Trial: "Certainly, she was not unconscious and I do believe from the blow that she was in extreme pain and there was a tremendous amount of swelling to her face as a result of the blow to the face and this is the reason ice was requested or required to stop the swelling of her face."
In State v. Thompson, 399 So.2d 1161, 1168 (La.1981), the Supreme Court on writ application addressed the issue of extreme pain.
Defendants argue that L.R.S. 14:34.1 is unconstitutional because it allows a victim's subjective perception of "extreme physical pain" to be determinative of a crime. They further argue that the failure of the statute to define "extreme physical pain" improperly vests the jury with a legislative function. A statute is unconstitutionally vague if we of common intelligence must guess as to its *553 meaning. See State v. Cannon, 383 So.2d 389 (La.1980). The phrase "extreme physical pain" describes a condition which most people of common intelligence can understand. The fact that the term is subjective in nature and susceptible to interpretation does not mean that it is violative of due process or will not necessarily be applied constitutionally. This phrase gives adequate warning of the conduct prescribed and provides a workable standard for judges and juries to fairly administer the law.
Although at no time during her testimony did the victim claim to have suffered "extreme pain", she did testify to receiving a blow to the head with either his fist or a blackjack. The district court judge ruled that the evidence presented was sufficient to substain a conviction of second degree battery.
Having reviewed the record, we find that the evidence is sufficient to sustain the defendant's conviction. The injury suffered by the victim did cause pain and swelling to her head. Furthermore, when a twenty-one year old man strikes a seventeen year old girl on the head with either his fist or a blackjack there is a substantial risk of death, serious injury or possible disfigurement.
This assignment of error is without merit.

EXCESSIVENESS OF SENTENCE
The defendant in this assignment contends that:
The trial court erred when it held that the grant of probation without a period of imprisonment would be a deprecation of the seriousness of the offense and when it interfered with an ongoing rehabilitation program by imposing a sentence of six months incarceration as a condition of probation did not conform to the requirements of Article 894.1 La.C.Cr.P., and the sentence imposed was not particularized to both the offender and the alleged offense.
The defendant is apparently arguing that the sentence imposed by the trial judge was excessive under the circumstances of the case and that the trial judge failed to comply with La.C.Cr.P. art. 894.1 when sentencing the defendant.
Louisiana Constitution Article I, Section 20 explicitly prohibits the imposition of excessive punishment. Louisiana Supreme Court decisions have interpreted this article as permitting review of a sentence for excessiveness even when the sentence is within the statutorily prescribed range. State v. Smith, 433 So.2d 688, 689 (La.1983); State v. Guajardo, 428 So.2d 468, 472 (La. 1983).
A sentence will be deemed excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless and purposeless infliction of pain and suffering. State v. Vaughn, 431 So.2d 763 (La.1983).
To prevent the possible imposition of excessive punishment and to guide the trial court in its sentencing tasks, the legislature enacted La.C.Cr.P. art. 894.1, which sets forth factors which justify a sentence of imprisonment and other factors which tend to indicate suspension of sentence or probation is appropriate. State v. Smith, 430 So.2d 31 (La.1983).
In the instant case, after the defendant's conviction, a pre-sentence investigation report was ordered by the trial judge. The report recommended against probation. The trial judge then ordered a sentencing hearing, during which the defendant's pastor, employer, and father testified on his behalf as to the progress that the defendant was making under the care of a psychologist. The psychologist, Dr. Joe Vienes, testified that he had been seeing the defendant once a week for the past six months. Dr. Vienes testified that the defendant had been very cooperative throughout the treatment program and that the defendant was making tremendous progress towards realizing his problems and adjusting his responses to them so that they were within the confines of socially acceptable behavior. Dr. Vienes stated that incarcerating the defendant would be *554 a disruptive factor hindering the defendant's progress towards socially acceptable behavior. On cross-examination, Dr. Vienes stated he did not know if the defendant would commit any more violent crimes, but did state that with continued treatment "I do believe that he'll make enough progress that I can feel comfortable that this young man is ready to take his place in society."
The defendant took the stand and testified that he was making great progress under the treatment of Dr. Vienes. He went on to state:
"Well I'm definitely responsible for everything I've done and my past actions are nothing to forget, only to learn by, and I know what I have done was completely wrong and there was no explanation whatsoever for what I have done. I know that I deserve any sentence that would be down on me or that would come down me at all and, I don't expect anything, I just only am sorry for what I have done and I know I would never do it again."
After hearing the above testimony, the trial judge proceeded to sentence the defendant to one (1) year at parish prison, sentence suspended and defendant placed on three years of active probation, special provisions being:
(1) The defendant serve six (6) months in Parish Prison,
(2) upon release, the defendant continue receiving psychiatric treatment, and,
(3) the defendant pay $127.50 in court costs.
The judge gave the following reasons in support of the sentence:
(1) The pre-sentence investigation report recommended against probation,
(2) The pre-sentence investigation report showed that the defendant was on probation from a French Quarter charge at the time of the offense,
(3) The pre-sentence investigation report showed that the defendant had been arrested on a rape charge in St. Bernard Parish, said charge being dropped or never accepted by the District Attorney.
(4) That it was the quick thinking of the victim, after she had been struck, which probably prevented any greater harm from occurring.
(5) That this was a serious offense committed by a defendant with a past history of similar offenses.
(6) That not putting the defendant in jail would deprecate the seriousness of the crime.
It should be noted that the trial judge took every precaution to ensure that he learned as much as he could about the defendant before sentencing him. The trial judge reviewed the pre-sentence investigation report and then ordered a sentencing hearing to give the defendant a chance to present mitigating circumstances for consideration. This is not a case where a sentence was hurriedly and unsympathetically imposed.
Furthermore, the trial judge did take cognizance of defendant's youth and the fact that both the defendant and the victim had been drinking alcoholic beverages. The trial judge also noted that it was the victim's refusal of the defendant's sexual advances which precipitated the defendant's violent conduct. There was no provocation or justification for the defendant's violent actions. The trial judge was apparently deeply concerned with protecting society from the kinds of acts which the defendant, by his past and present actions, showed a tendency to commit. The trial judge apparently placed little weight on the defendant's self serving statement that "I know I would never do it again" and felt that a period of incarceration would be in the best interests of the parties and society as a whole.
The trial judge complied fully with the dictates of Article 894.1. It is also noted that the penalty provisions of R.S. 14:34.1 provides as follows:
"Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or *555 without hard labor, for not more than five years or both."
The defendant in the instant case was sentenced to one (1) year in prison, 1/5 of the possible penalty, and was not fined. This sentence was suspended, a special condition being that the defendant serve six (6) months in parish prison. This sentence is at the lower end of the sentencing scale.
A trial judge has great discretion in imposing a sentence within statutory limits; when article 894.1 has been complied with, a sentence will not be set aside as excessive in the absence of a clear abuse of that discretion. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Washington, 414 So.2d 313 (La.1982). Furthermore, the trial court need not articulate every aggravating and mitigating circumstance outlined in article 894.1; the record need only reflect that the trial judge considered these guidelines and particularized the sentence to the defendant. State v. Smith, supra; State v. Lanclos, 419 So.2d 475 (La.1982).
The sentence imposed by the trial judge is definitely not excessive under the circumstances of this case. The assignment has no merit.

DECREE
For the foregoing reasons, the conviction and the sentence are affirmed.
AFFIRMED.