GUIDRY, Judge.
Defendant, Etta Pearl Livings, was charged with and unanimously found guilty by a six person jury of the second-degree battery of Mrs. Pearl Daigle in violation of La.R.S. 14:34.1. On November 30, 1984, she was sentenced to five (5) years at hard labor. The sentence was suspended, and the defendant was placed on five (5) years active suspended probation with the special condition of serving two (2) years in jail. Defendant appeals from her conviction and sentence.
PACTS
On May 20, 1983, the defendant and another nurses’ aide, Ms. Tyler, entered the victim’s room at the Opelousas Health Care Nursing Home. The defendant and Ms. Tyler were there to change the victim’s bedclothing. The victim was 85 years old, *477 spoke only French, weighed only 90 lbs., and was essentially bedridden.
During the process of changing the victim’s bedclothing, it was necessary for the aides to roll her over. The defendant started to roll the victim from her back to her side. Apparently during this procedure the victim grabbed at the defendant’s arm and pulled. There was some testimony that the victim had fingernails and possibly dug the fingernails into defendant’s arm or scratched her. At any rate, at this instant, the defendant either strongly pushed or slapped the victim on the forehead just above her right eye.
The incident was not reported to the hospital administration for a number of days until the area which received the blow started to turn black and blue. The discoloration extended from the right side of the forehead, across the forehead, and down to and around the right eye.
When the bruising was discovered, Ms. Tyler came forward and reported that the defendant had delivered the blow to the victim. Defendant denied hitting the victim or even being in the presence of the victim on May 20, 1983.
Five days after the incident, the victim fell out of a shower chair while being bathed. Defendant asserts that the victim hit her head during this fall. However, all the testimony indicates that the bruises were evident well before the shower fall, and that the victim’s fall in the shower was stopped by an attending aide and that the victim did not strike her head.
On May 26th or 27th, the victim started to drift into unconsciousness. At this time, she also evidenced pneumonia. The victim was admitted to a hospital in a comatose condition on May 28, 1983, and died on that date of congestive heart failure, pneumonia, or both.
An autopsy was performed on the victim after her death. The autopsy of her cranial area did not reveal any skull fractures or bruising of the brain. However, the brain autopsy did reveal some atrophy, reportedly due to the aging process, and, significantly, some brain swelling. The brain swelling, according to Dr. George McCormick, II, an expert in forensic pathology, and Dr. Padgett, an expert in pathology, was consistent with, and most likely due to a blow to the head. Dr. McCormick indicated that the swelling that was found usually produces a comatose condition. He was adamant that, although brain swelling could be the result of other factors, the swelling in this case was due directly to the blow the victim received to her head.
Appellant makes the following assignments of error for our consideration:
1. The trial court erred, for reasons patent on the face of the record, and defendant’s conviction and sentence should be reversed.
2. The trial court erred in refusing to grant a judgment of acquittal to second degree battery after the State concluded its case.
3. The trial court erred in that the jury verdict of guilty to second degree battery is contrary to law and the evidence presented at the trial.
ASSIGNMENT OF ERROR NO. 1
In this assignment of error the defendant contends that her conviction and sentence should be reversed on the basis of an error patent on the face of the record. An assignment of error is an appropriate method for bringing before the reviewing court an alleged error that is discoverable by a mere inspection of the pleadings and without inspection of the evidence. State v. La-Fleur, 258 La. 977, 249 So.2d 101 (1971).
Pursuant to La.C.Cr.P. art. 920, the record has been carefully examined. We have discovered no patent errors. Therefore, this assignment of error lacks merit.
ASSIGNMENTS OF ERROR NOS. 2 AND 3
In these assignments of error the defendant challenges the sufficiency of evidence to support her conviction. Both of these assignments involve sufficiency of evidence so they will be discussed together.
*478 The standard for testing the sufficiency of evidence requires that a conviction be based on proof sufficient to any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Second degree battery is defined in La. R.S. 14:34.1 as follows:
“Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.”
State v. Accardo, 466 So.2d 549 at 551 (La.App. 5th Cir.1985), writ denied, 468 So.2d 1204 (La.1985), states the following:
“The essential elements of second degree battery, which must be proven beyond a reasonable doubt, are: (1) The intentional infliction by the defendant, (2) of ‘serious bodily injury’ upon the victim.”
The defendant alleges that the State did not prove that she had “the specific intent” to inflict serious bodily injury, or, in other words, that the State did not prove that she intentionally inflicted serious bodily injury.
Specific intent is defined as the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1); State v. Fuller, 414 So.2d 306 (La.1982); State v. Daigle, 439 So.2d 595 (La.App. 1st Cir.1983). Although intent is a question of fact, it need not be proven as a fact; intent may be inferred from the circumstances of the transaction. Fuller, supra; LSA-R.S. 15:445.
The testimony is uncontradicted that it was the defendant who delivered the blow to Ms. Daigle. From the circumstances surrounding this incident, and viewing the evidence in a light most favorable to the prosecution, Jackson, supra, we believe that the State proved beyond a reasonable doubt that the defendant had the requisite specific intent, and that the blow was intentionally delivered.
The victim, 85-year-old Ms. Daigle, weighed only 90 lbs., was bedridden and in a weakened condition. The defendant stood approximately 5 foot 5 inches and weighed about 190 lbs. The testimony of the only eyewitness, Ms. Tyler, indicates that defendant intentionally struck the victim in order to make the victim release her grip on defendant’s arm. Under these circumstances, the actions by defendant cannot be viewed as a means of self-defense. LSA-R.S. 14:19. Ms. Daigle was simply too fragile to have been any threat to the defendant. Instead, the blow to Ms. Dai-gle’s head appears to have been more of a form of punishment intentionally delivered by defendant. See Accardo, supra; Fuller, supra, for similar results involving defendants and victims of extremely dissimilar body stature.
From the record it appears that the State also, after viewing the evidence in a light most favorable to the prosecution, proved beyond a reasonable doubt that the defendant inflicted serious bodily injury upon Ms. Daigle. Jackson, supra; Accardo, supra; LSA-R.S. 14:34.1.
The trial record amply demonstrates that the extensive bruising on Ms. Daigle’s face occurred soon after the alleged incident but before she fell in the shower. This bruising persisted for at least one week, up until the time of death. Besides the bruising on her face, the trial testimony by the two pathologists supports the conclusion that the brain swelling which caused her comatose or unconscious condition was due to the blow delivered by the defendant. The swelling of her brain was a protracted loss or impairment of the function of a bodily organ or mental faculty. The blow more than likely caused her unconsciousness, and the bruising was a pro *479 tracted and obvious disfigurement. Thus, according to LSA-R.S. 14:34.1, Ms. Daigle suffered serious bodily injury.
Therefore, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact would have found beyond a reasonable doubt that the defendant committed second-degree battery. These assignments of error lack merit.
For the foregoing reasons, the verdict of the trial court is affirmed.
AFFIRMED.