LOBRANO, Judge.
Defendant, Donald Wooley, was charged by grand jury indictment with the August 16, 1985 second degree murder of Joseph Nicosia, a violation of La.R.S. 14:30.1.
*884 On September 4, 1984, defendant was arraigned and pled not guilty. On September 13, 1985, this original plea was withdrawn and defendant entered pleas of not guilty and not guilty by reason of insanity. A sanity commission was appointed and on October 4, 1985 following a hearing, defendant was adjudged competent to stand trial. Trial was held on August 18 thru August 21, 1986. Defendant was found guilty as charged by an eleven to one vote.
On September 12, 1986, defendant was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence.
FACTS:
David Dean, a friend of the victim, Nicosia, arrived at Nicosia’s townhouse, located at 229 10th Street, at approximately 4:00 p.m. on August 16,1985 to drive Nicosia to the airport. He noticed Nicosia’s Oldsmobile was missing and the burglar alarm was off. Dean called at the rear door, which was ajar, and received no answer. He opened the door and looked in. He observed blood stains on the walls and floor. He immediately summoned the police. Officer Paul McClaskell arrived on the scene first and secured the premises. He discovered Nicosia’s body lying on the floor near the front door. Nicosia was nude and had sustained multiple stab wounds.
A search of the premises revealed Nicosia’s eyeglasses lying on a table in the den along with two drinking glasses. Under the den table was found a towing receipt with defendant’s name on it. No blood was found in the den or kitchen. There was no sign of a fight or struggle. None of the neighbors heard any noise or disturbance. Most of the evidence seized, a bedspread, throw rug, pants and underwear were found in a bathroom, bedroom and hallway leading to the door. Clothing belonging to Nicosia was scattered throughout the apartment. Nothing was out of place in the other rooms and no evidence was seized from the second bedroom, stairs or closet. Blood was found on the sheets, bedspread and door of one bedroom. A large pool of blood was found in the foyer. A knife with a broken tip was found near an alarm switch.
Police traced the towing receipt to Jackie’s Automotive, Inc. Robert Booker, a tow truck driver for the company testified that on August 16,1985, he was dispatched to Nicosia’s house to pick up a blue foreign car belonging to Donald Wooley and tow it to a nearby Texaco station. He testified the young man met him at the station in an Oldsmobile, was excited and nervous and paid for the tow charge with a credit card belonging to Joseph Nicosia.
On August 17, 1985, Detective Dillman, who was investigating the homicide was contacted by a Baton Rouge attorney, John Aydell. Aydell informed Dillman of defendant’s whereabouts.
Pursuant to this conversation, Dillman, on August 19, 1985, drove to Baton Rouge to the home of Debra Wooley, defendant’s sister. There he found Nicosia’s Oldsmobile and had it towed back to the crime lab in New Orleans. A search of the car revealed charge receipts from the Rodeway Inn and D.H. Holmes department store in Baton Rouge. Dinnerware, new clothing from D.H. Holmes and credit cards in the name of Joseph Nicosia were also found in the car.
Pat Christopher and Douglas Graff, employees of the Rodeway Inn, testified .that a young white male using Nicosia’s credit card checked into the motel on the evening of August 16, 1985 and checked out on the morning of August 17, 1985.
Virginia McKenzie, an employee of D.H. Holmes, testified that a young white man used a credit card in the name of Joseph Nicosia to charge clothing valued at $362.00 on August 16,1985. She could not positively identify defendant but remembered the man had a bandaged arm.
Sometime after checking out of the motel, defendant drove to his sister’s home. Defendant was incoherent and in a very excited state. He informed his sister and her roommate, Peggy Hurley, that he met a man in the French Quarter and went to the man’s home. The man then tried to stab him and he stabbed him back.
*885 Debra Wooley contacted attorney John Aydell and requested that he come over and find out what was going on. When he arrived he found defendant in a deep intoxicated sleep. Defendant had cuts on his hands and arms. Upon awaking, the defendant became hysterical. Debra Wooley and Peggy Hurley were able to calm defendant so that Aydell could elicit information from him.
Eventually, defendant told Aydell that he met a man in the French Quarter and went to the man’s home. He said the man undressed and tried to force him to perform a sexual act he did not want to do. He stated that a struggle ensued and the man attacked him with a knife. He then stabbed the man in self defense. Defendant admitted taking Nicosia’s car, drivers license, watch and credit cards. After he left Nicosia’s house, he stated he went home, cleaned the blood from his hands and arms and threw his bloodied clothes in a ditch on the way to Baton Rouge. Because defendant was hysterical, incoherent and threatening suicide, the trio took him to Parkland Hospital in Baton Rouge. Defendant was subsequently arrested on August 24, 1985 and incarcerated in Orleans Parish.
Defendant appeals his conviction and sentence asserting the following assignments of error:
1) The trial court erred in admitting the defendant’s statements made to his attorney while in an intoxicated and agitated state;
2) The state failed to prove beyond a reasonable doubt second degree murder.
ASSIGNMENT OF ERROR 1:
Defendant asserts the trial court erred in admitting the statements he made to Ay-dell while in an extremely intoxicated and agitated state which he argues rendered him incapable of waiving the attorney-client privilege. We disagree for the following reasons. La.R.S. 15:475 provides:
“No legal adviser is permitted, whether during or after the termination of his employment as such, unless with his client’s express consent, to disclose any communication made to him as such legal adviser by or on behalf of his client, or any advice given by him to his client, or any information that he may have gotten by reason of his being such legal adviser.”
However, before defendant can argue his inability to waive the above privilege, the following requisites, set forth in State v. Green, 493 So.2d 1178 (La.1986), must be established.
1) There must be an attorney-client relationship;
2) The communication, information or advice is made in confidence;
3) The communication or information by the client and/or the advice given by the attorney in response is sufficiently connected to the representation. State v. Green, 493 So.2d 1178 (La.1986)
The critical factor in determining whether an attorney-client relationship exists is whether the advice sought is from a professional acting in his capacity as such. State v. Green, supra. Here, no such relationship existed. Defendant did not call Aydell nor was he in any physical or mental condition to seek legal advice. In fact, it is doubtful whether defendant was even aware that Aydell was an attorney. When asked who he was representing at the time he was called to Debra Wooley’s home, Aydell stated, “There was no understanding about it. Nothing written or even said, only understood that I was there to help all of them, I suppose.” He further testified that he did not explain any legal rights and that he asked them to just let him find out what was going on.
Thus, it is clear from Aydell’s own statements that no attorney-client relationship existed between himself and defendant.
Even assuming arguendo that such a relationship did exist, defendant had no reasonable expectation of confidentiality. State v. Montgomery, 499 So.2d 709 (La.App. 3rd Cir.1986). Statements made in the presence of third parties are not excludable under the attorney-client privilege. State v. Montgomery, supra. Defendant made these statements not only in the pres *886 ence of his sister but also to Peggy Hurley. In fact, many of the statements testified to by Debra Wooley and Peggy Hurley were made by defendant to them prior to Ay-dells’ arrival.
This assignment of error is without merit.
ASSIGNMENT OP ERROR 2:
Defendant asserts the state failed to prove beyond a reasonable doubt that the defendant was guilty of second degree murder. Defendant asserts the state only proved manslaughter. We disagree.
When assessing the sufficiency of evidence to support a conviction, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982). In addition, when circumstantial evidence partly forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1983). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438.
La.R.S. 15:438 is not a separate test from Jackson. Rather, it is an evidentiary guideline to “facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt.” State v. Porretto, 468 So.2d 1142 (La.1985); State v. Wright, 445 So.2d 1198 (La.1984). All the evidence, both direct and circumstantial must meet the Jackson reasonable doubt standard. State v. Porretto, supra.
Second degree murder is the killing of a human being:
“(1) When the offender has a specific intent to kill or to inflict great bodily harm; ...”
A review of the record shows that both the direct and circumstantial evidence is sufficient to exclude all reasonable hypothesis of innocence. The evidence and defendant’s behavior are not indicative of a person trying to defend himself. Nicosia was stabbed 48 times. Defendant stole Nicosia’s car, driver’s license, watch and credit cards. He proceeded to his own home where he cleaned the blood from his body. Enroute to Baton Rouge he threw the broken knife handle and his bloodied clothes in a ditch along the highway. Later, he used Nicosia’s credit cards to purchase clothing and a motel room. Defendant stated to Peggy Hurley that he was not drunk or on drugs at the time of the offense. In addition, there was no expert psychiatric testimony that defendant did not know right from wrong at the time of the offense.
Thus considering the evidence in the light most favorable to the prosecution to the exclusion of every reasonable hypothesis of innocence, a rational trier of fact could have concluded that defendant was guilty of second degree murder.
This assignment of error is without merit.
ERRORS PATENT:
Defendant was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. In addition, defendant was ordered to pay $90.00 in court costs or in default thereof to spend an additional thirty days in jail.
Defendant was found to be indigent and is represented by the Orleans Indigent Defender’s Office. State v. Williams, 288 So.2d 319 (La.1974).
This court has held unconstitutional that portion of an indigent defendant’s sentence imposing payment of a fine or court costs in default of which he must serve additional jail time. State v. Ellzey, 496 So.2d 1090 (La.App. 4th Cir.1986); State v. Jackson, 492 So.2d 1265 (La.App. 4th Cir.1986); State v. Williams, 489 So.2d 286 (La.App. 4th Cir.1986).
Thus, it was error for the trial court to sentence defendant to additional jail time in default of payment of the court costs. *887 We amend the sentence and delete the additional 30 days of jail time.
Also, the record does not reveal whether defendant was present on August 21, 1986 when the jury instructions were read or at the jury’s rendition of the verdict. The minute entry for this date does not reflect defendant’s presence. Thus, we are unable to determine if defendant was present as required by C.Cr.P. Art. 831 or if defendant affirmatively and knowingly waived his presence as required by C.Cr.P. Art. 832.
Under these circumstances, we conclude that a contradictory hearing is necessary to determine if the defendant was in fact present when the jury was instructed and at the time the verdict was rendered.
Because we find no trial error, it is not necessary to reverse the conviction and sentence at this time. The contradictory hearing may cure the errors noted. The trial judge may grant a new trial should it be determined that the requisites of Article 831 of the Code of Criminal Procedure were not met. Furthermore, the right to appeal any adverse ruling by the trial judge on this issue is reserved to the defendant. State v. Senegal, 333 So.2d 639 (La.1976).
Accordingly, this matter is remanded to the district court for a contradictory hearing in accordance with this opinion. Absent a new trial being granted by the trial judge or an appeal by defendant, the conviction is affirmed and the sentence is amended to delete the requirement of a 30 day jail term in lieu of payment of fine.
CONVICTION AFFIRMED, SENTENCED AMENDED AND AFFIRMED, REMANDED.