612 So.2d 1019 (1993)
STATE of Louisiana, Appellee,
v.
Paul DIAZ, Appellant.
No. 24458-KA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1993.
*1020 Arbour & Aycock by Geary S. Aycock, West Monroe, for defendant-appellant.
Richard Ieyoub, Atty. Gen., Robert W. Levy, Dist. Atty., John L. Sheehan, Asst. Dist. Atty., for appellee.
Before MARVIN, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
The defendant, Paul Diaz, appeals his conviction for second degree battery. La. R.S. 14:34.1. Following a bench trial, Diaz was sentenced to serve five years at hard labor and to pay court costs. In default of paying costs, Diaz would serve an additional 60 days concurrent with the sentence. Upon payment of costs, the sentence would be suspended and Diaz placed on five years supervised probation subject to specified conditions, including: one year imprisonment in the parish jail, 90 eight-hour days of community service, full restitution to the victim including civil damages,[1] payment of fines and various other costs totaling over $1,500, and participation in a substance abuse program. For the following reasons, we affirm the defendant's conviction and sentence.

FACTS
During the early morning hours of January 26, 1991, a group of Louisiana Tech University athletes stormed the Kappa Sigma *1021 Fraternity House located just blocks from the university campus in Ruston. Once the athletes had entered the house, a large fight broke out during which the victim, John Bullock, suffered a broken jaw. The fight stemmed from an incident that occurred earlier in the evening at Muther's Bar where a Louisiana Tech baseball player got into a fight with several members of the fraternity. Word of the fight reached the athletic dorm where Diaz lived even though he was not a school athlete at the time. Diaz and several of the athletes, who had been drinking, decided to go to the fraternity house to retaliate. About two dozen people from the athletic dorm descended on the fraternity house, as Diaz described, to "get the Kappa Sigs." (R. p. 272). He later testified that he merely went to watch. (R. p. 276). Several of the athletes armed themselves with golf clubs and "thundersticks," a scaled-down version of the baseball bat.
The victim, Bullock, was a fraternity member who was present at the house when the athletes attacked. He had not been involved in the incident at Muther's Bar. When he heard the commotion coming from the fraternity's chapter room, he walked from his bedroom to see what was happening. When he reached the foyer leading into the chapter room, he saw the room in chaos with approximately 50 people fighting and rolling around on the floor. At that point, a black male, whom Bullock described as left-handed, struck him on the right side of his jaw. (R. pp. 136, 138). Although Bullock did not actually see a weapon in the black male's hand, he testified that based on the severity of the blow he believed a weapon was used. (R. p. 137-38).
Bullock experienced extreme pain and bleeding from the interior of his mouth. He was taken to the emergency room at Lincoln General Hospital. Shortly thereafter, he was driven to St. Francis Hospital in Monroe where it was determined that he had suffered a double fracture of the jaw. Due to the severe displacement of the fractures, Dr. Richard Willis, an oral and maxillofacial surgeon, performed immediate surgery. The fractured bone was wired together and had to remain immobilized for seven weeks, making it difficult for Bullock to speak during that time and necessitating a restricted diet of liquids. Bullock described his pain as "excruciating." (R. p. 145).
Bullock positively identified Diaz from a photographic lineup as the assailant. By bill of information, Diaz was charged with aggravated battery. After Diaz agreed to waive his right to jury trial, the charge was reduced to second degree battery.
At trial, Bullock identified defendant without "a shadow of a doubt." (R. p. 139). Moreover, defendant confirmed at trial that he was left-handed just as Bullock had previously described. (R. p. 275). He also admitted that he had gone to the fraternity house and had hit someone, although he denied that Bullock was the person he hit. He further denied using a weapon. Upon cross-examination, he admitted that he had initially lied to Tech officials when he denied involvement in the fight; he further admitted that he had indeed hit someone in the face as hard as he could. (R. pp. 279, 285).
Following the bench trial, Diaz was found guilty of second degree battery. On December 13, 1991, he filed a motion for new trial and a motion for acquittal. Both motions were denied. On March 11, 1992, Diaz was sentenced to serve five years at hard labor, suspended upon the fulfillment of specified conditions. Diaz subsequently filed a written objection to the severity of sentence on March 16, 1992.
Diaz appeals, arguing several assignments of error.

SUFFICIENCY OF EVIDENCE
In defendant's first assignment of error, he contends that the trial court erred in finding him guilty of second degree battery. In his second assignment, he argues that the trial court erred in denying his motion for acquittal. Both assignments urge that the evidence presented by the prosecution was insufficient to support the conviction for second degree battery. These arguments are without merit.
*1022 In reviewing the sufficiency of evidence to support a conviction, the reviewing court must examine the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984); State v. Bellamy, 599 So.2d 326 (La.App.2d Cir.), writ denied 605 So.2d 1089 (1992).
La.C.Cr.P. art. 821 provides that a post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilt. This too raises the question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App.2d Cir.1992). Hence, both assignments of error question the legal sufficiency of the prosecutor's evidence and may be treated simultaneously.
La.R.S. 14:34.1 defines second degree battery as:
a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty, or substantial risk of death.
The crime of second degree battery requires a showing of specific intent. State v. Fuller, 414 So.2d 306 (La.1982). Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Although intent is a question of fact, it need not be proven as a fact; instead, it may be inferred from the circumstances of the transaction. Fuller, supra.
Defendant is between 6' and 6'1" tall. He testified that at the time of the fight he weighed between 238 and 240 pounds and was on a weight training regimen. He further testified that he struck someone in the face as hard as he could. (R. p. 285). Although the record does not disclose the victim's height and weight, the trial judge's emphasis of defendant's size indicates that he perceived a disparity in the sizes of the defendant and the victim. (R. pp. 120-21). Indeed, in oral argument, defendant's counsel stated to this court that the victim weighed approximately 185 pounds.
Given the facts of this case, we do not think it was unreasonable for the trial court to conclude that when Diaz struck Bullock as hard as he could he intended to inflict serious bodily harm. Indeed, the Louisiana Supreme Court has held that "[w]hen a much stronger man hits a younger, smaller man, the fact finder could rationally conclude that the offender intended to cause, at a minimum, unconsciousness and/or extreme physical pain." Fuller, supra at 310. See also State v. Mullins, 537 So.2d 386 (La.App. 4th Cir. 1988).
Defendant makes much of the fact that he only struck the victim once, failed to knock the victim to the floor or render him unconscious, and did not pursue the victim after striking him. These factors, argues defendant, indicate an absence of intent to cause serious bodily harm. We do not agree. The supreme court has firmly rejected the notion that the second degree battery statute envisions an offender who mercilessly beats a fallen victim. Fuller, supra. The statute clearly states that the intended harm is "serious bodily injury" and defines this to involve, among other things, unconsciousness, extreme physical pain or protracted and obvious disfigurement. Under the circumstances of this case, when Diaz struck Bullock as hard as he could, he intended to cause serious bodily injury as contemplated by the statute. See State v. Accardo, 466 So.2d 549 (La. App. 5th Cir.1985) (statutory requirements met where single blow to victim's head merely caused swelling and a stunned reaction).
Indeed, as a consequence of defendant's blow, Bullock's jaw was broken in two *1023 places. He testified that his mouth was bleeding after the blow and his jaw "just kinda jingled." (R. p. 140). He further stated that some of his teeth appeared to be missing but that he later learned the gap in his lower row of teeth was caused by the separation of the fractured pieces of his mandible. Dr. Willis confirmed that the fractures created a six millimeter gap between Bullock's teeth, and he described the breaks in Bullock's jaw as a "serious injury." (R. pp. 180, 183). Bullock described his pain as "excruciating," and his mother testified that he was asking for a pain shot at the hospital. The injury required a five-hour reparative surgery during which Bullock was under general anesthesia. For approximately two months following surgery, Bullock's mouth was wired shut, which kept him from eating solid foods and greatly impaired his ability to speak. According to his mother, at the time of trial, some eight months after the fight took place, Bullock's face was still disfigured, and he was still having reparative work done to his teeth. (R. pp. 162-64).
We find that, viewing the evidence as a whole in a light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt that Diaz struck Bullock without the latter's consent and with the specific intent to cause serious bodily injury.

JURY TRIAL WAIVER
Defendant's third and fourth assignments of error are directed at the trial court's denial of his motion for new trial. In his third assignment, defendant alleges that the trial court erred in denying his motion for new trial based on the supposed invalidity of his jury trial waiver.
Defendant argues, in brief, that his trial counsel, Roderick Gibson, coerced him into waiving his right to jury trial thus providing ineffective assistance under the Sixth Amendment. He alleges that Gibson did so in order to cover up mistakes he supposedly made while representing defendant. According to Diaz, prior to trial, Gibson had instructed him not to appear on a scheduled court date; Gibson told him that the date was wrong and that he would inform him when his presence in court was required. The record reflects that Diaz failed to appear and the court issued a call on bond and a bench warrant for his arrest. (R. pp. 2-3). Diaz alleges that Gibson struck a deal with the prosecutor whereby the call on bond and bench warrant would be rescinded provided Diaz waived his right to jury trial; in this manner, Gibson would avoid having to answer for his mistake. The record reflects that on June 14, 1991 Diaz waived his right to jury trial. While the record suggests that this waiver was made in consideration for the reduction of his charge from aggravated battery to second degree battery, it also reflects the prosecutor's request that the bench warrant be recalled. (R. pp. 111, 114).
Although Diaz raised this argument at the hearing on the motion for new trial, Gibson was by then relieved of his duties as defendant's counsel and did not appear at the hearing. Thus, the trial court did not have the opportunity to hear Gibson's version of the facts. Given defendant's admitted history of lying in connection with this incident, the trial court was certainly not obligated to accept his version of the story as truth. (R. p. 279). Consequently, we do not find that the trial court erred in failing to grant defendant's motion for new trial.
The thrust of the argument is not that the jury waiver, but rather Gibson's conduct, entitles Diaz to a new trial. As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post conviction relief in the trial court where a full evidentiary hearing may be conducted. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. McGhee, 554 So.2d 145 (La.App.2d Cir.1989). Only when the record discloses sufficient evidence to decide the issue should the issue be addressed on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Easter, 537 So.2d 801 (La.App.2d Cir.1989); McGhee, supra. The record is insufficient for this court to review Diaz's claim of ineffective assistance of counsel. His remedy is post conviction *1024 relief where the quality of his attorney's performance can be more fully explored. State v. Prudholm, 446 So.2d 729 (La. 1984); McGhee, supra.
In his fourth assignment of error, Diaz alleges that the trial court erred in failing to consider the testimony of attorney Lewis Jones offered during the hearing on the motion for new trial. Diaz called Jones to testify about a statement the prosecutor allegedly made to Gibson, and Gibson then repeated to Jones. The court sustained relevance and hearsay objections. (R. pp. 376-77). Defendant now argues that Jones's testimony was not offered for the truth of the matter asserted.
This assignment of error lacks merit. It is evident from the proffered testimony that Jones's statements were hearsay. La. C.Ev. art. 801 C. Moreover, even if we were to agree with defendant that Jones's testimony was not offered for the truth of the matter asserted, it would then be inadmissible as irrelevant. The trial court did not err in denying the motion for new trial.

EXCESSIVE SENTENCE
In his fifth assignment of error, defendant alleges that the trial court imposed an excessive sentence. La.C.Cr.P. art. 881.1 states that failure to make a motion for reconsideration of the sentence and to state specific grounds for the motion precludes a defendant from raising an objection to the sentence on appeal or review. This court has applied article 881.1 as written. State v. Bush, 604 So.2d 1383 (La. App.2d Cir.1992).
Diaz did not make or file a motion for reconsideration. He merely filed a "written objection to severity of sentence" in which he contended only that the sentence is excessive and disproportionate to the crime. (R. p. 306). The record does not reflect a ruling on the objection. Under the circumstances, the written objection achieves no more than would an oral objection noted for the record. Diaz's written objection does not request that the court reconsider its sentence; thus, it does not comply with article 881.1. Accordingly, Diaz is precluded from now objecting to the sentence, and this court has nothing to review in that regard.

ERRORS PATENT
La.C.Cr.P. art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post conviction relief. The record shows that the court did not so inform Diaz. This apparent defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentencing. La.C.Cr.P. art. 921.
The district court is directed to inform Diaz of the provisions of art. 930.8 within 10 days of the rendition of this opinion and will file written proof that he received the notice in the record of the proceedings. State v. Powell, 598 So.2d 454 (La.App.2d Cir.), writ denied 605 So.2d 1089 (1992).
We have examined the record for further errors patent and have found none. The conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] We note that the trial court, preferring to await the outcome of the pending civil suit, did not fix a determinate amount for restitution as required by La.C.Cr.P. art. 895 A(7), nor did it set the method of payment based on the earning capacity and assets of defendant as required by La.C.Cr.P. art. 895.1 A. State v. Hardy, 432 So.2d 865 (La.1983); State v. Lozado, 594 So.2d 1063 (La.App.3d Cir.1992); State v. Dauzat, 590 So.2d 768 (La.App.3d Cir.1991); State v. Rogers, 517 So.2d 428 (La.App.1st Cir.1987); State v. Lambert, 499 So.2d 1196 (La.App.5th Cir.1986). However, defendant did not raise this sentencing defect in a motion to reconsider as required by La.C.Cr.P. art. 881.1, nor did he raise the defect in a contemporaneous objection to the sentence. Accordingly, we will not review the sentence.