# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 05-742

STATE OF LOUISIANA

VERSUS

JUAN R. VIDAURRI

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 264,127
HONORABLE DONALD T. JOHNSON, DISTRICT JUDGE

**********

## GLENN B. GREMILLION
## JUDGE

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Glenn B. Gremillion, Judges.

**CONVICTION VACATED; JUDGMENT ENTERED; AND REMANDED.**

James C. Downs
District Attorney
P. O. Drawer 1472
Thomas R. Willson
Asst. District Attorney
Alexandria, LA 71309
(318) 473-6650
Counsel for Plaintiff/Appellee:
  State of Louisiana

Carey J. Ellis,  III
Louisiana Appellate Project
P. O. Box 719
Rayville, LA 71269
(318) 728-2043
Counsel for Defendant/Appellant:
  Juan R. Vidaurri

Juan R. Vidaurri
Allen Correctional Center
3751 Lauderdale Woodyard Road
Kinder, LA 70648
  In Proper Person

GREMILLION, Judge.

In this case, the defendant, Juan R. Vidaurri, was convicted of second degree battery, arraigned as a habitual offender under La.R.S. 15:529.1, adjudicated to be a fourth felony offender, and sentenced to twenty years imprisonment at hard labor. Defendant appeals alleging as assignments of error that (1) there was insufficient evidence to convict him of second degree battery; (2) there was no indication that he waived his right to a jury trial; (3) the trial court erroneously allowed an expert to qualify and testify; (4) the State was allowed to introduce improper rebuttal evidence and violated the rule of sequestration; and (5) the State failed to present sufficient evidence to support the adjudication of Defendant as a habitual offender. For the following reasons, we vacate Defendant's conviction for second degree battery, enter a judgment for simple battery, and remand for resentencing. Since we find Defendant guilty of a misdemeanor, we hold that his second and fifth assignments of error are moot. However, we affirm the trial court's judgment with regard to his third and fourth assignments of error.

## SUFFICIENCY OF EVIDENCE

In his first assignment of error, Defendant asserts that the evidence is insufficient to sustain his conviction as the State failed to prove all of the elements required for a conviction of second degree battery. Those elements are set forth in La.R.S. 14:34.1, which provides, in part, that:

> Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
>
> For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or

1

protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.

Defendant claims that the State failed to prove that the victim suffered serious bodily injury and, therefore, the evidence was insufficient to sustain his conviction for second degree battery.

We have clearly established the analysis for a claim of insufficient evidence:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. See *State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Further, we have held that in order to prove second degree battery, the State must show that "the defendant: 1) committed a battery upon another; 2) without his consent; and 3) intentionally inflicted serious bodily injury." *State v. Jackson*, 02-1250, pp. 2-3 (La.App. 3 Cir. 2/5/03), 838 So.2d 841, 843, *writ denied*, 03-0832 (La. 10/17/03), 855 So.2d 759 (citing *State v. Young*, 00-1437 (La. 11/28/01), 800 So.2d

2

847).  Defendant asserts that the State failed to prove the serious bodily injury element sufficient to sustain his conviction.  We agree.

In *State v. Helou*, 02-2302, pp. 6-8 (La. 10/23/03), 857 So.2d 1024, 1028-29, the supreme court gave the following examples of cases where the state had proven the serious bodily injury element of second degree battery:

> Our jurisprudence demonstrates many cases where the State proved the "serious bodily injury" element of second degree battery.  Some examples are:  1) *State v. Abercrumbia*, 412 So.2d 1027 (La.1982), where the defendant hit the victim with boards across his head, neck, and arm, causing a "deep cut over his right eye;" 2) *State v. Robertson*, 98-0883 (La.App. 3d Cir.12/9/98), 723 So.2d 500, *writ denied*, 99-0658 (La.6/25/99), 745 So.2d 1187, where the defendant knocked the victim to the ground and repeatedly kicked and hit her until she "kind of lost her senses for a minute;" the victim had bruises and contusions over the entire extent of her body, which left significant scars and lacerations on her nose; and 3) *State v. Robinson*, 549 So.2d 1282, 1285 (La.App. 3d Cir.1989), where the defendant stabbed the victim twice with a large, folding knife.
>
> There are other cases which indicate that less substantial injuries may also constitute "serious bodily injury."  *See State v. Young*, 00-1437, pp.  9-10 (La.11/28/01), 800 So.2d 847, 852-853, where the victim suffered a bloody nose, tenderness in hyoid area below the larynx, and complained of pain at incision in his lower abdominal area. The physician testified that the defendant's act of choking the victim could have resulted in substantial risk of death, and three months after the attack, the victim continued to have throat problems; *State v. Diaz*, 612 So.2d 1019, 1022-1023 (La.App. 2d Cir.1993), where the defendant broke the victim's jaw during a group fight; *State v. Mullins*, 537 So.2d 386, 391 (La.App. 4th Cir.1988), where a 6 foot tall defendant punched a 5'5" girlfriend, breaking her nose; *State v. Legendre*, 522 So.2d 1249, 1251 (La.App. 4th Cir.1988), *writ denied*, 523 So.2d 1321 (La.1988), where the defendant raised the victim over his head and smashed her to the floor, rendering her momentarily immobile and requiring a brief hospitalization followed by outpatient treatment leading to a loss of employment for several weeks; *State v. Accardo*, 466 So.2d 549, 552 (La.App. 5th Cir.1985), *writ denied*, 468 So.2d 1204 (La.1985), where a 17-year-old female victim was struck on the head by the defendant with either his fist or a blackjack, causing the side of her face to swell.

In the instant case, the victim described Defendant's actions on the night in question by saying that he came into her bedroom, grabbed her, slammed her to the ground, and started hitting and kicking her in her face and arms. She testified that he put his hands around her neck and was choking her. She said that she pushed Defendant away with her feet and that she was holding her baby while this occurred.

Thomas Downey described the victim's appearance immediately following the altercation and stated that "[s]he was crying hysterically. Her lip was busted. She had the beginning swellings of a black eye, scratches on her throat." Alana Lane also testified that the victim had swollen eyes and a cut on her face.

Later in the afternoon on the day of the incident, Officer David Foshee, of the Alexandria Police Department, spoke with the victim. He stated that he observed her to have "a couple of scratches on her face and a black eye." Officer Foshee continued to describe the victim as he observed her during his visit to her home:

Q. Now you stated, I think, that you noticed some marks on her.

A. Yes, sir.

Q. But she was standing, and talking, and functioning with you? Is that correct?

A. Yes, sir.

Q. She was -- had -- she did not report that she had been unconscious? Is that correct?

A. No, sir.

Q. Did not report that she had any broken bones or any other . . .

A. No, sir.

4

Q. . . . disabling injury?

A. No, sir.

Q. Did she ask you or mention that she needed medical treatment?

A. No, sir.

Q. What you're telling me right now, would that be why the initial police reports have under "Injury" marked "Minor Injury". Would you agree with that?

A. (No audible response.)

Q. Based on what you saw?

A. Yes, sir. I mean, nothing was hindering her.

Q. Okay. And this is Sunday afternoon, correct?

A. Yes, sir. Around --

Q. And the incident took place about 1:00 a.m. Sunday morning, correct?

A. I believe so.

Q So, as of Sunday afternoon, when you're talking to her, it's your testimony that injury-wise, there appears to be nothing hindering her?

A. Correct.

In *Helou*, the supreme court concluded that the evidence was insufficient to sustain a conviction for second degree battery because the State failed to prove that the defendant had intentionally inflicted serious bodily injury. In that case, the victim was accosted in a parking lot by the defendant, who, along with several other individuals, struck and beat him. Following the beating, the victim was taken by ambulance to an emergency room where he was briefly attended; he sought no further

5

medical care. The supreme court provided the following reasons for ruling the evidence insufficient to support the defendant's conviction for second degree battery:

> In summary, there is no testimony that the victim lost consciousness at any time despite the victim's "confusion" as to whether his wife rode with him in the ambulance to the hospital. There is no evidence of severe injury. In fact, the victim initially declined medical help; he required only a brief visit to the emergency room; thereafter, he sought no further medical attention, and there is no evidence of disfigurement or permanent disability. No medical personnel appeared at trial to provide jurors with a diagnosis or a summary of the victim's treatment. The only evidence in the record is the medical bill for $983.90. There was no explanation of what medical services were provided to the victim. Because the State failed in its burden of proof, any conclusion by the jury as to pain suffered by the victim was simply a guess on the jury's part, since the State failed to offer *any* evidence on the issue. Simply put, because the jury had to infer the victim's pain, the State failed to prove beyond a reasonable doubt that the victim, in fact, suffered "extreme physical pain" as required by the statute. Accordingly, we conclude that the evidence is insufficient to sustain the defendant's conviction for second degree battery.

*Id*. at 1029.

In *State v. Touchet*, 04-1027 (La.App. 3 Cir. 3/9/05), 897 So.2d 900, we reversed a second degree battery conviction because the evidence was insufficient to prove serious bodily injury. We found "[t]here was no evidence presented that the victim lost consciousness, suffered a 'protracted and obvious disfigurement,' suffered a 'protracted loss or impairment of the function of a bodily member, organ, or mental faculty,' or was put at 'substantial risk of death.'" *Id*. at 907. We concluded that the only remaining question, whether the injuries caused "extreme physical pain," was answered in the negative by the evidence presented.

In the instant case, as in *Helou* and *Touchet*, the evidence does not show that the victim suffered any "protracted and obvious disfigurement," any "protracted loss or impairment of the function of a bodily member, organ, or mental faculty," or

6

was put at substantial risk of death. Nor does the record indicate that her injuries caused "extreme physical pain." Additionally, the record indicates that she did not lose consciousness at any time, and further, no evidence was presented that the victim sought medical attention for her injuries. Therefore, we find that the evidence does not show that the victim suffered the serious bodily injury required to constitute second degree battery. Accordingly, we vacate Defendant's conviction for that offense.

However, while the evidence is insufficient to uphold a conviction of second degree battery, it is sufficient to support a conviction for simple battery. Under La.Code Crim.P. art. 814(A)(15), simple battery is an authorized responsive verdict to a charge of second degree battery. In *Touchet*, 897 So.2d 900, we rendered a conviction for simple battery when the evidence was sufficient to uphold a battery conviction, but was insufficient to uphold a second degree battery conviction. A battery is defined as "the intentional use of force or violence upon the person of another." La.R.S. 14:33. Louisiana Revised Statute 14:35 defines simple battery as a "battery committed without the consent of the victim."

In this case, the victim testified that Defendant used force or violence upon her when he struck, kicked, and choked her. No evidence, even remotely, suggests that the victim consented to the attack. Therefore, we vacate Defendant's conviction for second degree battery, render a conviction for simple battery, a statutory responsive verdict pursuant to La.Code Crim.P. art. 814(A)(15), and remand the case for resentencing.

7

## EXPERT TESTIMONY

In his third assignment of error, Defendant asserts that the trial court erred by allowing Jannease Seastrunk to qualify and testify as an expert in the field of domestic violence abuse. The trial court overruled Defendant's objection and ruled her competent to testify.

Louisiana Code of Evidence Article 702 provides, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Louisiana Code of Evidence Article 703 addresses the bases of opinion testimony by experts:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

In *State v. Hillman,* 613 So.2d 1053, 1058 (La.App. 3 Cir.), *writ denied,* 617 So.2d 1181 (La.1993), this court stated:

> [T]he purpose of the testimony of the expert witness is to provide a basis of knowledge, and background information on a subject. The judge's or jury's role is that of ultimate trier of fact, that is they relate the background knowledge from the expert to the facts established by evidence at trial, and thereby make a determination of guilt or innocence.

"La.C.E. art. 702 states that experts may be qualified by reason of 'knowledge, skill, experience, training, or education.' Thus, formal education in the area of expertise is not required; 'experience alone is enough to qualify a witness as an expert.'" *Adams v. Chevron U.S.A., Inc.*, 589 So.2d 1219, 1224 (La.App. 4 Cir.

1991), *writs denied*, 592 So.2d 414, 415 (La.1992) (quoting *Aaron v. Bankers and Shippers Ins. Co. of New York,* 475 So.2d 379, 382 (La.App. 1 Cir. 1985)).

Further, "[t]he question of whether a witness is an expert, the scope of his expertise and the breadth of his opinion are for the most part within the discretion of the trial judge. Absent abuse of discretion, the trial judge's decision should not be overturned." *State v. Brossette*, 93-1036 (La.App. 3 Cir. 3/2/94), 634 So.2d 1309, 1321, *writ denied*, 94-0802 (La. 6/24/94), 640 So.2d 1344.

The trial court recognized Seastrunk as an expert in domestic violence after the State tendered her based upon her experience working as a trainer and as a consultant for the Louisiana Coalition Against Domestic Violence. She also told the trial court that she had previously testified as an expert in domestic violence in other courts in Louisiana, and that she had provided related training to state judges. In the instant case, her testimony was limited to descriptions of circumstances which may typically arise in domestic violence situations. Considering Seastrunk's prior experience, we find that the trial court did not abuse its vast discretion in allowing her to testify as an expert. Therefore, this assignment of error is without merit.

### REBUTTAL TESTIMONY/RULE OF SEQUESTRATION

In his fourth assignment of error, Defendant asserts that Seastrunk's testimony constituted improper rebuttal evidence and violated the rule of sequestration. Initially, Defendant asserts that Seastrunk's testimony was improperly offered as rebuttal evidence because it merely rehashes and repeats the testimony submitted in the State's presentation of its evidence. In *State v. Deboue*, 552 So.2d 355, 362 (La.1989), the supreme court described the nature of evidence properly

9

elicited on rebuttal as that "offered to explain, repel, counteract or disprove facts given in evidence by an adverse party." The supreme court also recognized, in *Deboue*, the well-settled principle that "the state may not reserve part of its case-in-chief for rebuttal testimony after the defense has rested." *Id.*

In her testimony, Seastrunk referred to the testimony given by the victim and by other witnesses, including Defendant, by comparing those statements to circumstances typical of domestic violence situations. That previous testimony regarded those witnesses' own behavior as they responded to Defendant's allegedly abusive actions. Seastrunk's testimony was not repetitious of previous testimony, nor was it part of the State's case-in-chief. Rather, her testimony simply reflected her expert opinion on the nature of the actions purportedly taken by those other witnesses and was offered to explain the facts given by both the State and Defendant in their cases-in-chief. It was based on all of the testimony given during the entire trial. Accordingly, she could not have effectively testified during the State's case-in-chief. Therefore, Seastrunk's testimony was not improper rebuttal evidence and the trial court did not commit error in allowing it into evidence.

Defendant also asserts that Seastrunk was present in the courtroom during the presentation of testimony by previous witnesses and, therefore, she violated the trial court's sequestration order. Louisiana Code of Evidence Article 615(B)(3) provides that an expert witness is not subject to a trial court's sequestration order. Because Seastrunk was properly allowed to testify as an expert witness, Article 615(B) excepted her from the trial court's order of sequestration. Further, it

10

was necessary for her to hear the testimony in order for her render her opinion. Accordingly, this assignment of error has no merit.

## WAIVER OF A JURY/HABITUAL OFFENDER ADJUDICATION

In his second and fifth assignments of error, Defendant asserts that the record indicates that he did not validly waive his right to a jury and that the State failed to present sufficient evidence to support his adjudication as a habitual offender. Since we have vacated Defendant's conviction for second degree battery, a felony, and entered a conviction for simple battery, a misdemeanor, Defendant would not have been entitled to a jury trial. Accordingly, his assignment with regard to his waiver of his right to a jury trial is rendered moot. Whether or not there was sufficient evidence to support Defendant's adjudication as a habitual offender is also rendered moot because Defendant's felony conviction has been vacated. Accordingly, we need not address these assignments of error.

## CONCLUSION

We find that the evidence is insufficient to prove beyond a reasonable doubt that Defendant intentionally inflicted serious bodily injury on the victim, which is required to sustain a conviction for second degree battery. However, the evidence is sufficient for a conviction of simple battery. Accordingly, the second degree battery conviction is vacated, and the trial court is ordered to enter a conviction of simple battery. We further remand the matter to the trial court for resentencing.

The habitual offender proceedings held with regard to Defendant are rendered invalid as a result of his felony convictions being vacated.

11

**CONVICTION VACATED; JUDGMENT ENTERED; AND REMANDED.**