NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-0318

STATE OF LOUISIANA

VERSUS

GREGORY P. LANDRY

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT,
PARISH OF ST. MARTIN, NO. 05-230101
HONORABLE JOHN E. CONERY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JIMMIE C. PETERS
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and James T. Genovese, Judges.

CONVICTION AFFIRMED, SENTENCE VACATED,
AND REMANDED FOR RESENTENCING WITH INSTRUCTIONS.

Jeffrey J. Trosclair
Assistant District Attorney, 16thJudicial District
St. Mary Parish Courthouse
Franklin, LA 70538
(337) 828-4100
COUNSEL FOR APPELLEE:
    State of Louisiana

**Mark Owen Foster**
**Louisiana Appellate Project**
**Post Office Box 2057**
**Natchitoches, LA 71457**
**(318) 572-5693**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Gregory P. Landry**

PETERS, J.

The defendant, Gregory P. Landry, appeals his conviction for second degree battery, a violation of La.R.S. 14:34.1. For the following reasons, we affirm the defendant's conviction, but vacate the sentence imposed and remand this matter to the trial court for resentencing.

### DISCUSSION OF THE RECORD

This criminal litigation arises from a barroom altercation which occurred in St. Landry Parish, Louisiana, on the evening of October 17, 2004. On that evening, Joyce Frink and Carl Turchek arrived at the The Body Shop, a St. Landry Parish lounge, some time between 10:00 and 11:00 p.m. Shortly after they entered the bar, a fight broke out, involving the defendant, his friend Gene Mitchell Olivier, Mr. Turchek, and Ms. Frink. While the trial testimony concerning the origins and causes of the fight differ, it is not disputed that at some point during the physical altercation, the defendant caused Ms. Frink to receive severe injuries to her nose and right eye socket. The State of Louisiana initially charged the defendant with simple battery, a violation of La.R.S. 14:35, but later amended the charge to second degree battery, a violation of La.R.S. 14:34.1. A jury heard the matter on October 17, 2006, and returned a verdict of guilty as charged.

As previously stated, the testimony at trial was conflicting. Ann Valdez, a bartender at the lounge, testified that Mr. Turchek and Ms. Frink went directly to the bar upon their arrival and immediately ordered drinks. According to Ms. Valdez, Mr. Turchek then went to the restroom and Ms. Frink walked over and spoke to the defendant, who was sitting with Mr. Olivier at the bar. Ms. Valdez testified that the defendant asked Ms. Frink to leave him alone, and when Mr. Turchek returned, a

fight broke out. Ms. Valdez testified that she did not see the defendant hit Ms. Frink during the fight, but that she did see Ms. Frink "fly" back into a table.

Both Mr. Turchek and Ms. Frink testified that the defendant and Mr. Olivier were the aggressors in the altercation. Mr. Turchek testified that the altercation began, not after he returned from the bathroom, but as soon as he had placed his drink order. According to Mr. Turchek, Mr. Olivier punched him in the face and he fell to the floor. He then got back to his feet and returned the blow. When Ms. Frink came to see if he was all right, the defendant struck her twice in the face. Ms. Frink's testimony supported Mr. Turchek's version of the altercation. She testified that Mr. Turchek walked into the establishment ahead of her, and as they neared the bar, Mr. Olivier punched Mr. Turchek in the face. According to Ms. Frink, the defendant followed Mr. Olivier's aggression by rushing from the bar and punching her twice in the face. After being struck, Ms. Frink remembered little of what occurred.

Mr. Olivier testified that Mr. Turchek and Ms. Frink were intoxicated when they arrived at the lounge, and that the altercation had its origins in obscene remarks uttered by Ms. Frink. According to Mr. Olivier, the physical aspects began when Mr. Turchek accosted him and Ms. Frink began to hit the defendant behind the head. He denied ever seeing the defendant charge Ms. Frink, as she suggested in her testimony, and denied seeing the defendant hit her.

Another patron of the bar, Maude Lagrange, testified that Ms. Frink approached her in an intoxicated condition and tried to start an argument. According to Ms. Lagrange, the defendant blocked Ms. Frink's approach toward her and, when he did, Ms. Frink swung at him. She then observed the defendant push Ms. Frink away, causing her to fall.

2

The defendant testified at the trial, and his testimony differed from that of the other witnesses as well. He testified that he was seated at the bar when Ms. Frink and Mr. Turchek entered the establishment. According to the defendant, the couple paused to speak with Ms. Lagrange before continuing to the bar, and, when Mr. Turchek left to go to the bathroom, Ms. Frink was standing by Mr. Olivier. According to the defendant, Ms. Frink appeared to be very intoxicated and started "nagging." When Ms. Frink did not comply with Mr. Olivier's repeated requests to get away from him, he intervened and asked Ms. Frink to leave Mr. Olivier alone. He testified that during this time, Ms. Lagrange walked by and made a remark and Ms. Frink "fussed" at her in response. The defendant interjected himself in that dispute as well, asking Ms. Frink to leave them alone. According to the defendant, Ms. Frink began cussing, swung at him, and scratched the back of his head. He testified that he pushed Ms. Frink, and when she returned to scratch him once or twice more and hit him on his head, he slapped her in the face. She then fell down onto a table and a chair.

Ms. Frink described the pain as being both immediate and excruciating. She sought medical treatment at a local hospital that same evening and was treated and released. The next day, she sought treatment at the Veterans Administration Hospital and was referred to Lafayette General Hospital, where it was determined that she had sustained a shattered eye socket, a broken nose, and contusions. According to Ms. Frink, the treating physician expressed concern that the damages might cause her to loose sight in the injured eye. Further treatment at a Veterans Administration Hospital in New Orleans, Louisiana, required a four to five day stay in the hospital while the physicians reset her nose and implanted a titanium eye socket. She testified

that she returned to the New Orleans medical facility for a second surgery some eight months later for correction of excessive droopiness under her eye and damage to her sinuses. Ms. Frink testified that the pain lasted until she underwent surgery, and that she was required to take pain medication. According to Ms. Frink, her medical bills totaled $8,000.00.

After his conviction, the trial court sentenced the defendant to serve five years at hard labor, but suspended the incarceration sentence and placed the defendant on five years supervised probation. The probation conditions included a 12-month sentence in the parish jail and restitution "in a sum to be determined at a restitution hearing." A restitution hearing was scheduled several times, but continued each time. On October 19, 2007, the restitution hearing was continued without date. The defendant has appealed his conviction, assigning two assignments of error:

1. The evidence was insufficient to support the conviction for second degree battery.

2. The trial court erred in allowing the State to ask Mr. Landry about other past allegation[s] of criminal activity in order to attack his credibility.

**OPINION**

***Errors Patent***

Louisiana Code of Criminal Procedure Article 920(2) requires that we review all appeals for errors "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." In fulfilling that requirement in the matter before us, we find that the trial court erred in sentencing the defendant to a sentence that is both illegally excessive and indeterminate.

Second degree battery provides a maximum incarceration sentence of imprisonment "with or without hard labor, for not more than five years." La.R.S.

4

14:34.1. Thus, the trial court sentenced the defendant to the maximum sentence. When the trial court suspended that sentence and placed the defendant on five years probation, it also imposed special conditions of probation on the defendant. One of those conditions required that the defendant serve twelve months in the parish jail. This had the effect of subjecting the defendant to a sentence that exceeded the maximum sentence should he violate his terms of probation. "[A] district court may not impose a suspended sentence and require the defendant to spend additional time in jail as a condition of probation if the overall effect is to expose the defendant to a greater term of imprisonment than provided by the statute violated." *State v. Alexander*, 95-1099, p. 2 (La.App. 3 Cir. 12/26/96), 687 So.2d 527, 528. Additionally, La.Code Crim.P. art. 893(A) restricts the defendant's probationary period to no more than five years, and periods of confinement imposed as a condition of probation must be added to the period of probation for purposes of determining whether the total amount of probation exceeds that five-year limit. *State v. Brown*, 93-2305 (La.App 4 Cir. 11/17/94), 645 So.2d 1282. Thus, both the defendant's sentence and his probationary period were excessive.

Further, although the trial court ordered restitution as a condition of probation, it never set the amount of restitution or established a payment schedule, as required by La.Code Crim.P. art. 895.1. Because the amount of restitution was never set, the sentence was indeterminate and therefore illegal. *State v. Joseph*, 05-186 (La.App. 3 Cir. 11/2/05), 916 So.2d 378.

For the foregoing reasons, we vacate the defendant's sentence and remand the case for the trial court to resentence the defendant to a term of imprisonment that does not exceed the statutory maximums of La.R.S. 14:34.1 and La.Code Crim.P. art.

893(A). Furthermore, should the trial court choose to again place the defendant on supervised probation, and should it choose to impose restitution as a special condition of probation, the trial court must set the amount of restitution and a payment schedule.

## Assignment of Error Number One

In his first assignment of error, the defendant argues that the evidence was insufficient to support the conviction for second degree battery. When the defendant raises the issue of sufficiency of evidence on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983).

> It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371 (citations omitted).

Second degree battery is defined by La.R.S. 14:34.1 as "a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury." Additionally, it provides that,

> For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.

A conviction for the offense of second-degree battery requires proof that the offender had the specific intent to inflict serious bodily injury. *State v. Welch*, 615

6

So.2d 300 (La.1993). The defendant asserts that the evidence, when viewed in a light most favorable to the prosecution, does not establish beyond a reasonable doubt that he had the specific intent to cause serious bodily harm when he struck the victim. Specific intent is defined in La.R.S. 14:10(1) as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Our supreme court has held that "such intent 'may be inferred from the circumstances of the transaction.'" *State v. Stowe*, 93-2020, p. 3 (La. 4/11/94), 635 So.2d 168, 171 (quoting *State v. Fuller*, 414 So.2d 306, 310 (La.1982)).

It is obvious that the jury did not find credible the defendant's assertion that he only slapped Ms. Frink in self-defense during that altercation, and that her injuries must have occurred when she fell. Thus, viewing the evidence in the light most favorable to the prosecution, the testimony reflected that the defendant twice punched Ms. Frink in the face. The force of the blows knocked Ms. Frink backward and caused her to collapse. Ms. Frink was unconscious and did not fully awaken until she was already at the hospital. As a result of the incident Ms. Frink required multiple surgeries to correct her broken nose and eye socket.

In similar circumstances, courts have held that a punch to the face or head resulting in broken bones is sufficient to uphold a verdict of second degree battery. *See State v. Landry*, 03-1671 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235 (the defendant punched the victim, causing him to fall onto the concrete. The victim was knocked unconscious and suffered a broken jaw, a fractured jaw, scrapes, and bruises, and was on a liquid diet for eight weeks); *State v. Kirkland*, 42,397, p. 5 (La.App. 2 Cir. 8/15/07), 962 So.2d 1173, 1174, *writ denied*, 07-1928 (La. 2/15/08), 976 So.2d 174

7

(the 25-year-old defendant "deliberately hit the 70-year-old victim in the face with sufficient force to break the bones in the victim's skull"); *State v. Accardo*, 466 So.2d 549 (La.App. 5 Cir.), *writ denied*, 468 So.2d 1204 (La.1985) (the twenty-one year old male defendant struck the seventeen year old female victim once in the head with either his fist or a blackjack, causing some swelling on her head); and *State v. Diaz*, 612 So.2d 1019 (La.App. 2 Cir. 1993) (the defendant, who was larger than the victim, struck the victim once, as hard as he could, breaking the victim's jaw).

Based on this jurisprudence and our review of the record, we hold that a rational trier of fact could have inferred from the extent of Ms. Frink's injuries that the defendant specifically intended to cause, at a minimum, unconsciousness or extreme physical pain.

Finally, the defendant argues that the victim's testimony regarding her diagnosis and treatment was inadmissible hearsay. But the defense raised no objection to this evidence being entered at trial. The party seeking review of an issue that arose at trial, including claims regarding the admission of improper hearsay evidence, must make an objection at the time the issue arises and give the basis for the objection. La.Code Crim.P. art. 841(A) and *see State v. McDonald*, 414 So.2d 735 (La.1982). Because there was no contemporaneous objection, this argument is not properly before this court.

We find no merit in the defendant's first assignment of error.

### *Assignment of Error Number Two*

The defendant contends that "[t]he trial court erred in allowing the state to ask Mr. Landry about other past allegation[s] of criminal activity in order to attack his credibility," arguing that the district court should have limited the state's cross-

8

examination of the defendant concerning other crimes evidence to prior convictions. The defendant claims that the trial court's decision to allow the state to cross-examine the defendant concerning prior arrests and investigations entitles him to a new trial.

The following is the pertinent exchange concerning the other crimes evidence:

Q.     Now you say you were afraid you would get blamed on this like everything else.  What else have you been blamed for?

A.     Most everything I ever been in.

Q.     I'm sorry?

A.     Almost everything I've ever been in.

Q.     Everything you have been in like what, Mr. Landry?

A.     Well, is that relevant to this case[?]

Q.     Well, you are the one that brought it up.  I want to find out.

A.     Okay. Well[,] the Task Force in St. Martinville harassed me about three (3) years ago[,] and I went to court for over a year with them.  And the Judge - he was a black fellow - they found him dead or something - he ended up throwing it out of court and all of that because they had messed up my truck and [a] bunch of stuff at my house.

Q.     What Task Force are you talking about, Mr. Landry?

A.     St. Martinville.

Q.     What were they messing with you for?

**BY MS. LONG:**

Your Honor, I am going to object to the relevance as to the facts of this case.

**BY THE COURT:**

Over-ruled.  It goes to credibility.

**BY MR. SERRETT:  (Continuing)**

Q.     What were they messing with you for, Mr. Landry?

9

A.    I don't know, sir. They just came to my house, banged up my truck, and all that, and started a bunch of trouble.

Q.    Okay.  Did they accuse you of anything?

A.    Well, I went to court for a whole year.  They accused me of maybe smoking "crack" cocaine or selling "crack" cocaine and [all] kind of lies until I proved them all wrong.

Q.    Oh, okay.

A.    As a matter of fact, that was my lawyer, the one that was sitting in here, the one that is on your #2 case.  He was my lawyer.

Q.    Okay. So they were just messing with you, huh?

A.    Yes, sir.

Q.    They picked you out of a whole bunch of people to mess with; correct?

A.    Well, I am a Bandito, and St. Martinville can't stand Banditos.

Q.    Oh, okay.

Thus, the objection to this questioning at trial was based on relevance, and there was no objection to the evidence on the grounds that it constituted inadmissible other crimes evidence.  As previously discussed, an appellant may not raise an argument on appeal that was not asserted in a contemporaneous objection at trial. La.Code Crim.P. art. 841(A).  This rule applies to instances where a party objected to the introduction of evidence at trial on one ground but either adds to or changes the basis for challenging the evidence on appeal.  *See State v. Clayton*, 427 So.2d 827 (La.1982) and *State v. Ford*, 349 So.2d 300 (La.1977).

Accordingly, this assignment of error is not properly before this court.

# DISPOSITION

     For the foregoing reasons, we affirm the defendant's conviction. However, we vacate the defendant's sentence and remand the case for resentencing to a term of imprisonment that does not exceed the statutory maximums of La.R.S. 14:34.1 and La.Code Crim.P. art. 893(A). If the trial court places the defendant on supervised probation and imposes restitution as a special condition of probation, the trial court shall set the amount of restitution and a payment schedule.

**CONVICTION AFFIRMED, SENTENCE VACATED, AND REMANDED FOR RESENTENCING WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules–Courts of Appeal, Rule 3–2.

11