NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-981

STATE OF LOUISIANA

VERSUS

REGAL MINOR

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 05-K-5819-C
HONORABLE ALONZO HARRIS, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir and
Elizabeth A. Pickett, Judges.

AFFIRMED.

Earl B. Taylor
District Attorney
P. O. Drawer 1968
Opelousas, LA 70571
(337) 948-0551
Counsel for Plaintiff/Appellee:
    State of Louisiana

**Jennifer Ardoin**
**Assistant District Attorney**
**P. O. Drawer 1968**
**Opelousas, LA 70571**
**(337) 948-0551**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Annette Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**Counsel for Defendant/Appellant:**
**Regal Minor**

**DECUIR, Judge.**

Defendant, Regal Minor, was charged with second degree battery, a violation of La.R.S. 14:34.1. Defendant elected to have a bench trial, and the court found Defendant guilty as charged and sentenced him to two and one-half years in parish jail.

Defendant now appeals his conviction, assigning a single error.

## FACTS

On December 2, 2005, the Defendant and another individual drove up, exited their vehicle and attacked Mark Gillis in the front yard of his home beating him to the ground. After the beating ceased, Gillis called 911. The responding officer advised that he seek medical attention. Gillis presented to the ER with multiple contusions, numbness in his head, headache, and pain in his ribs. Gillis also had to have blood drained from a hematoma on his ear to avoid a potential deformity. Gillis testified that he was in extreme pain and could not get out of bed for a week following the attack.

## SUFFICIENCY OF EVIDENCE

In his sole assignment of error, Defendant argues the evidence adduced at trial does not support his conviction for second degree battery. The analysis for this type of argument is well-established:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of

review.  See *State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)).  In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Second  degree battery is defined by La.R.S. 14:34.1, which states, in pertinent part:

> Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
>
> For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.

Defendant argues the State did not prove he had the specific intent to inflict "serious bodily injury" upon the victim.  He also appears to question whether the victim actually suffered serious bodily injury.  Regarding intent, we note that Defendant and an accomplice knocked the victim to the ground and then continued punching and kicking him.  Such action has been recognized as indicative of a specific intent to inflict serious bodily injury. *See, e.g., State v. Robertson*, 98-883 (La.App. 3 Cir. 12/9/98), 723 So.2d 500, *writ denied*, 99-658 (La. 6/25/99), 745 So.2d 1187; *State v. Daigle*, 439 So.2d 595 (La.App. 1 Cir. 1983).  Also, Louisiana courts have found specific intent in cases where larger men hit smaller men. *See, e.g., State v. Accardo*, 466 So.2d 549 (La.App. 5 Cir.), *writ denied*, 468 So.2d 1204 (La.1985).  An attack in concert with other assailants is at least as dangerous as an attack by a single large, strong man.  Thus, the fact that Defendant acted in concert

2

with an accomplice should be viewed as indicative of a specific intent to inflict serious bodily injury.

Regarding the degree of actual injury to the victim, Defendant correctly observes he did not break any of Gillis's bones, or cause permanent physical disfigurement. He also argues that the victim's claim to have suffered "extreme physical pain" is not consistent with other evidence.

Photos of the victim show extensive bruising to the left side of his face, and to his right ear. Dr. Mark Francis Olivier, the emergency room physician who treated the victim, described the injuries as follows:

A. He has some injuries to his face and head.

Q. Okay. And did you examine him?

A. Yes, sir.

Q. And did he have any complaints of pain at that time?

A. Yes, sir.

Q. Doctor, how did he describe the level of pain he was in?

A. Moderate.

Q. At that time it was moderate?

A. Yes, sir.

Q. What were the - how would you classify - what did you do to treat him?

A. Well, he had bruising and swelling in the left cheek area. He had a small laceration over the eye on the left which required some steri-strip placement. He had bruising and swelling in the back of the head. He had tenderness in the right side of the jaw. And he had a um - swelling of the right ear which was a hematoma which is a collection of blood under the skin of the ear above the cartilage. And the way that is treated is you have to drain the blood away to prevent destroying the cartilage in the future.

3

Q. So, Doctor, would you say if Mr. Gillis had not received the medical treatment that you provided to him as it pertains to his ear, what would have happened in your professional opinion?

A. If the hematoma is not drained then there is potential for deformity of the ear, the cartilage could die and you would end up with a deformed ear.

His testimony of cross-examination was similar. During redirect, the following colloquy occurred:

Q. Doctor, before you treated Mr. Gillis for the hematoma, would you consider the hematoma a disfigurement of his ear? Did he have a disfigurement on his ear before you treated him?

A. He had a swelling [of] the ear above the cartilage which I would consider a disfigurement.

Q. And when you treated him for the hematoma that prevented the ear from being permanently disfigured. Would you say that that was to the highest degree of medical certainty that you know, that prevented a permanent disfigurement from staying there.

A. Right. The ear is different as far as hematomas in that area because they have the potential of destroying cartilage underneath them and causing permanent disfigurement if you don't evacuate them.

On appeal, Defendant argues the potential for disfigurement was "speculative at best." However, the doctor's testimony showed the victim was treated specifically to prevent such disfigurement. The fact that Gillis received timely and effective medical help does not negate Defendant's criminal culpability. The record is clear that Defendant and his accomplice inflicted an injury sufficient to disfigure the victim's ear. Thus, it was not unreasonable for the trial court to conclude that Defendant's conduct constituted second degree battery.

Defendant cites three cases in which Louisiana courts have reduced second degree battery convictions to simple battery. The victim in the present case received a more serious injury than those suffered in the cases Defendant cites. In *State v.*

4

*Helou*, 02-2302 (La. 10/23/03), 857 So.2d 1024, the victim had a bloody nose, in *State v. Vidaurri*, 05-742 (La.App. 3 Cir. 12/30/05), 919 So.2d 803, *writ denied*, 06-573 (La. 10/27/06), 939 So.2d 1270, the victim sustained scratches and a black eye; in *State v. Touchet*, 04-1027 (La.App. 3 Cir. 3/9/05), 897 So.2d 900, the injuries at issue were bruises. However, the present case is distinguishable from those three cases because of the damage to Gillis's ear. While bruises and scratches will heal and fade naturally, the victim's ear required medical intervention to avoid permanent damage.

For the reasons discussed, this assignment lacks merit.

## DECREE

The Defendant's conviction is affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.